[No. B180324. Second Dist., Div. Eight. June 21, 2006.]

TURTLE RIDGE MEDIA GROUP, INC., Plaintiff and Respondent, v. PACIFIC BELL DIRECTORY et al., Defendants and Appellants.

COUNSEL

Bjork Lawrence, Robert K. Lawrence and Robyn D. Roberts for Defendants and Appellants.

Albright, Yee & Schmit, Clifton W. Albright, Derek S. Yee, Lucien A. Schmit III and Boris Orlov for Plaintiff and Respondent.

OPINION

**RUBIN, Acting P. J.**—Pacific Bell Directory doing business as SBC Smart Yellow Pages, SBC Communications, Inc., and SBC Directory Operations appeal from the trial court's order denying their petition to compel. We reverse and direct the court to order arbitration.

## FACTS AND PROCEEDINGS[1]

Turtle Ridge Media Group, Inc. is in the business of hand delivering printed advertising media. In the spring of 2002, it made a sales call to the offices of SBC Smart Yellow Pages (SBC) hoping to get some of SBC's

---

[1] Because this is an appeal from an order denying a petition to compel arbitration, we accept the complaint's allegations without passing on their veracity.

business.[2] In the past, SBC had declined to work with Turtle Ridge because the company was too small. In the intervening time, however, SBC had changed its approach to delivering phonebooks and was therefore interested in Turtle Ridge's proposal. SBC suggested Turtle Ridge contact Clientlogic Operating Company, Inc. (Clientlogic), which was also bidding on SBC's phonebook delivery contract. SBC believed that by pooling their resources, Turtle Ridge and Clientlogic might be able to submit a successful bid.

Turtle Ridge and Clientlogic agreed to work together to win SBC's contract, and their efforts prevailed. SBC awarded the contract to Clientlogic and expressly authorized Clientlogic to subcontract work to Turtle Ridge. Accordingly, Clientlogic awarded a subcontract to Turtle Ridge incorporating the contract between SBC and Clientlogic for hand and mail delivery of SBC phonebooks.

According to the complaint, after entering into the subcontract, Turtle Ridge began to discover that many of the phonebooks were undeliverable because their delivery addresses were invalid. Unknown to Turtle Ridge, SBC's request for bids on the contract had deliberately exaggerated the number of phonebooks Clientlogic and Turtle Ridge were to deliver. SBC had inflated the number because it allowed SBC to charge higher advertising rates to advertisers in the phonebook, who paid rates based on the phonebook's circulation. In addition to defrauding advertisers, the inflated number defrauded Turtle Ridge because it had calculated its contract price using that number. Turtle Ridge asked Clientlogic to discuss the exaggerated number with SBC. When Clientlogic did so, SBC attempted to cover up its scheme by terminating Clientlogic's contract. In response, Clientlogic terminated Turtle Ridge's subcontract.

Turtle Ridge sued SBC. It alleged causes of action for fraud and deceit, unlawful conduct by a public utility, unfair business practices, intentional and negligent interference with prospective economic advantage, and quantum meruit.

SBC petitioned to compel arbitration. It argued Turtle Ridge's claims arose from Turtle Ridge's subcontract with Clientlogic, which had incorporated the contract between Clientlogic and SBC. SBC's contract with Clientlogic, SBC observed, contained an arbitration clause covering "any controversy arising under, out of, in connection with, or relating to" the contract, which,

---

[2] SBC Smart Yellow Pages' formal name is Pacific Bell Directory. Pacific Bell Directory brings this appeal, along with two other SBC-related companies, SBC Directory Operations, Inc., and SBC Communications, Inc. The details of their corporate affiliations are not relevant to this appeal, and we therefore refer to them collectively as SBC.

according to SBC, applied to Turtle Ridge's claims against SBC.[3] Turtle Ridge opposed arbitration, noting SBC had never entered into a direct contractual relationship with it, and therefore SBC could not enforce the arbitration provision against it. Finding no contract between SBC and Turtle Ridge, the court denied SBC's petition for arbitration. This appeal followed.[4]

## DISCUSSION

The parties agree the subcontract involves interstate commerce because Turtle Ridge is a California corporation, and Clientlogic is from Tennessee, and the delivery area for the phone books covered California and Nevada. Because the subcontract involves interstate commerce, Turtle Ridge concedes the Federal Arbitration Act (FAA) applies to it. (9 U.S.C. § 1 et seq.)

■ Under the FAA, state law governs formation of arbitration agreements. (9 U.S.C. § 2; *Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705, 1712 [1 Cal.Rptr.3d 328] (*Metalclad Corp.*).) The FAA obligates states to treat arbitration agreements the same as other types of contracts, and prohibits them from disfavoring or burdening arbitration agreements compared to other types of contracts. Section 2 of the act states, "an agreement in writing to submit to arbitration an existing controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) Thus, states must place arbitration agreements on an equal footing with all other types of contracts. (*EEOC v. Waffle House, Inc.* (2002) 534 U.S. 279, 289 [151 L.Ed.2d 755, 122 S.Ct. 754]; *Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468, 478 [103 L.Ed.2d 488, 109 S.Ct. 1248].)

Here, Turtle Ridge does not challenge the contract's formation, nor does it contend the agreement to arbitrate has been revoked. Hence, we are not called upon to decide whether a contract exists under state law. (*Metalclad Corp., supra*, 109 Cal.App.4th at p. 1712.)

■ Once a viable arbitration agreement is found under state law, federal law governs its interpretation. (*Metalclad Corp., supra,* 109 Cal.App.4th at pp. 1712–1713; accord, *Boucher v. Alliance Title Co., Inc.* (2005) 127

---

[3] More fully, the clause stated, "Any controversy arising under, out of, in connection with, or relating to this Agreement, and any amendment thereof, or the breach thereof, unless specifically excluded therefrom, shall be determined and settled by arbitration in St. Louis, Missouri in accordance with the commercial rules of the American Arbitration Association."

[4] In addition to suing SBC, Turtle Ridge also sued Clientlogic in a separate complaint. Clientlogic successfully moved that complaint to federal court, which ordered the matter to arbitration. That complaint and arbitration order are not before us.

Cal.App.4th 262, 268 [25 Cal.Rptr.3d 440] (*Boucher*).) As there are no undisputed facts, we review the trial court's order de novo. (*NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 71–72 [100 Cal.Rptr.2d 683].) The legal issue presented to us is not whether the subcontract is enforceable but who may invoke its terms. (See *Metalclad Corp.*, at p. 1712 [where nonsignatory trying to enforce arbitration agreement, "the question is not so much *what* is covered by the agreement but rather *who* may invoke it" (original italics)].) Turtle Ridge contends SBC as a nonsignatory to the subcontract may not enforce the incorporated arbitration clause. To answer that contention, we turn to federal arbitration law. (*Metalclad Corp.*, at pp. 1712–1713; accord, *Boucher, supra,* at p. 268.)

█ Under federal law, a nonsignatory may compel a signatory to arbitrate its claims when the signatory's claims are based upon and intertwined with a contract containing an arbitration agreement. As the court explained in *Metalclad Corp., supra*, 109 Cal.App.4th 1705, "the equitable estoppel doctrine applies when a party has signed an agreement to arbitrate but attempts to avoid arbitration by suing nonsignatory defendants for claims that are ' "based on the same facts and are inherently inseparable" ' from arbitrable claims against signatory defendants." (*Id.* at pp. 1713–1714; see also *Boucher, supra,* 127 Cal.App.4th at pp. 268–272 [allowed estoppel based solely on claims being intertwined with contract].) The rule applies to prevent parties from trifling with their contractual obligations. As the *Metalclad Corp.* court observed, "The doctrine thus prevents a party from playing fast and loose with its commitment to arbitrate, honoring it when advantageous and circumventing it to gain undue advantage." (*Metalclad Corp.*, at p. 1714.)[5]

█ Turtle Ridge contends equitable estoppel does not apply because its causes of action against SBC are not intertwined with its subcontract. Turtle Ridge is mistaken. Its claims against SBC arose from its business dealings with SBC and Clientlogic, which the contract and subcontract governed; outside of those contracts, Turtle Ridge had no business relationship with SBC. We observe that SBC did not impose itself on Turtle Ridge; Turtle Ridge instead sought out SBC, hoping to do business for it. Interested in

[5] The "fast and loose" rationale echoes a common justification for the doctrine of judicial estoppel, which prevents parties from playing fast and loose with the courts. (See, e.g., *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181 [70 Cal.Rptr.2d 96].) Indeed, the similarity between the estoppel here and judicial estoppel runs deeper than their rationale because, for reasons we discuss in the text, the estoppel here, like judicial estoppel, does not require detrimental reliance. (*Id.* at pp. 182–183.)

Although both *Metalclad Corp.* and *Boucher* involved legally related nonsignatories (parent or sister corporation), the latter makes clear that the doctrine is not so limited. (*Boucher, supra,* 127 Cal.App.4th at p. 272; see *Metalclad Corp., supra,* 109 Cal.App.4th at pp. 1708–1709; see also *Inter. Paper v. Schwabedissen Maschinen & Anlagen* (4th Cir. 2000) 206 F.3d 411, 418 [no corporate relationship between signatory and nonsignatory]; *Hughes Masonry v. Greater Clark County Sch. Bldg.* (7th Cir. 1981) 659 F.2d 836, 839 [same].)

giving work to Turtle Ridge, SBC encouraged Turtle Ridge to work with Clientlogic in submitting a coordinated bid. The contract and subcontract that emerged reflected that coordination. As if fitting a hand inside a glove, the SBC contract named Turtle Ridge as the sole approved subcontractor, and the subcontract incorporated the contract, a point emphasized by Turtle Ridge in its complaint. The following emerges from our consideration of the contract and subcontract together: SBC and Clientlogic expressly agreed to arbitrate any disputes. Their agreement was expressly incorporated by reference in the subcontract between Turtle Ride and Clientlogic. Although the subcontract explicitly excluded certain SBC/Clientlogic terms in the incorporation process, the arbitration clause was not one of them. The result was that either expressly or by incorporation each agreement contained an arbitration provision. Given the contractual and actual relationships among the parties, Turtle Ridge's claims against SBC are legally intertwined with its subcontract with Clientlogic that contains the incorporated arbitration clause.[6]

In addition to the roots of its business relationship with SBC resting in one overarching business proposal, the allegations of Turtle Ridge's complaint presupposed the existence of the contract and subcontract as part of a tripartite, ongoing relationship that benefited SBC, Clientlogic and Turtle Ridge. Turtle Ridge's causes of action for fraud and deceit rested on SBC's use of inflated circulation numbers in soliciting bids for the contract. Its causes of action for unfair business practices and violation of the Public Utilities Code also rested on the inflated numbers.[7] Turtle Ridge's interference with prospective economic advantage causes of action were intertwined with the subcontract because Turtle Ridge alleged SBC knew that terminating SBC's contract with Clientlogic sounded the subcontract's death knell and interfered with Turtle Ridge's ability to win future contracts. (See *Buckhorn v. St. Jude Heritage Medical Group* (2004) 121 Cal.App.4th 1401, 1407 [18 Cal.Rptr.3d 215] [interference claims arbitrable because "issue turns on whether the tort claims are 'rooted' in the contractual relationship between the parties, not when they occurred."].) And finally, Turtle Ridge's cause of

---

[6] The mechanics of the subcontract's incorporation clause—Clientlogic stands in the shoes of SBC and Turtle Ridge stands in the shoes of Clientlogic—preclude a finding that Turtle Ridge *contracted* with SBC to arbitrate. However, equitable estoppel in this context does not require an express or even an implied covenant. If it did, the estoppel and incorporation theories applicable to nonsignatories would be coterminous.

[7] That Turtle Ridge might not be able to state, as SBC contends, a private right of action under the Public Utilities Code does not mean Turtle Ridge's claim does not arise from the subcontract. It may simply mean SBC might have a complete defense to the statutory claim, a question we need not decide here.

Turtle Ridge's unfair business practice cause of action also seeks injunctive relief. Such claims may not be arbitrable. (See *Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303, 316 [133 Cal.Rptr.2d 58, 66 P.3d 1157].) However, the parties do not address the issue, which should be presented to the trial court in the first instance.

action against SBC for quantum meruit sought payment for work Turtle Ridge performed under the subcontract.

■ Turtle Ridge contends equitable estoppel does not apply because SBC cannot show it detrimentally relied on Turtle Ridge's being obligated to submit to arbitration. In support, Turtle Ridge cites the state law of California—where the contract was signed and largely performed—and Missouri—where the arbitration was to take place—to argue detrimental reliance is an element of equitable estoppel. Turtle Ridge's reliance on the laws of those states is misplaced, however, because state law does not govern the interpretation of arbitration agreements to which the FAA applies. (*Boucher, supra,* 127 Cal.App.4th at p. 268 ["Under the United States Arbitration Act, th[e] question [of whether a nonsignatory can compel arbitration] is answered not by state law, but by the federal substantive law of arbitrability."]; *Metalclad Corp., supra,* 109 Cal.App.4th at p. 1712 ["Whether . . . a nonsignatory to that agreement, may rely on it to compel . . . arbitration is answered by federal law, not state law."]; but see *Larian v. Larian* (2004) 123 Cal.App.4th 751, 759 [19 Cal.Rptr.3d 916] [majority concluded without analysis that state choice of law provision preempted FAA; concurrence at p. 766 rejected majority's conclusion]; see also *Garrison v. Superior Court* (2005) 132 Cal.App.4th 253, 262 [33 Cal.Rptr.3d 350] [stating without analysis that parties' choice of California Arbitration Act rendered FAA inapplicable].) Regardless of whether equitable estoppel may require detrimental reliance in other contexts, the test for applying equitable estoppel to an arbitration agreement is whether the causes of action are intertwined with the contract containing the agreement. (*Metalclad Corp.,* at pp. 1713–1714.) As such, the phrase "equitable estoppel" is a bit of a misnomer, for detrimental reliance is not necessary. Although the doctrine's name might be confusing, its application is clear: Turtle Ridge cannot play fast and loose with its contractual obligations by selectively enforcing the subcontract. Its claims rest on the subcontract and therefore it is bound by all the terms of that subcontract, not just those it likes.[8]

■ Finally, Turtle Ridge's assertion that SBC lacks standing to enforce Turtle Ridge's subcontract is unavailing. Turtle Ridge contends SBC lacks standing because SBC was not a signatory to the subcontract. The contention

---

[8] None of the Missouri or California cases cited by Turtle Ridge for the supposed rule that detrimental reliance is required for equitable estoppel deal with arbitration. (See *Ryan v. Ford* (Mo.Ct.App. 2000) 16 S.W.3d 644, 651 [client sued lawyer for legal malpractice based on lawyer's handling of court approved personal injury settlement]; *City of Long Beach v. Mansell* (1970) 3 Cal.3d 462, 487 [91 Cal.Rptr. 23, 476 P.2d 423] [city estopped from challenging subdivision of tidelands]; *Development Co. v. Seaboard D. C. Corp.* (1934) 1 Cal.2d 121, 128–129 [34 P.2d 139] [lawsuit alleging conversion of herd of cattle]; *Nicolopulos v. Superior Court* (2003) 106 Cal.App.4th 304, 311 [130 Cal.Rptr.2d 626] [statutory defense involving deed of trust].)

is unavailing because, in one sense, *every* nonsignatory lacks standing, yet courts have repeatedly held equitable estoppel may apply to an arbitration agreement for the benefit of nonsignatories. SBC's "lack of standing" is therefore not fatal to its petition to compel arbitration.[9]

## DISPOSITION

The order refusing to compel arbitration is reversed. The trial court is directed to issue a new order granting the petition of Pacific Bell Directory doing business as SBC Smart Yellow Pages, SBC Communications, Inc., and SBC Directory Operations, to compel arbitration. On remand, the trial court may consider whether to sever the unfair business practices cause of action from its arbitration order. Appellants to recover their costs on appeal.

Boland, J., and Mosk, J.,[*] concurred.

On July 20, 2006, the opinion was modified to read as printed above.

---

[9] In that we conclude Turtle Ridge is equitably estopped to resist arbitration, we need not address SBC's separate point that, because Turtle Ridge incorporated by reference part of the SBC agreement into the Turtle Ridge contract, SBC's motion to compel should have been granted for that additional reason. (See *Boucher, supra,* 127 Cal.App.4th at p. 268.) Nor do we address Turtle Ridge's third party beneficiary discussion, a theory SBC has not pursued on appeal.

[*] Associate Justice of the Court of Appeal, Second Appellate District, Division Five, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.