[No. A116463. First Dist., Div. Five. July 31, 2007.]

PHILIP ROWE et al., Plaintiffs and Respondents, v.
LOUIS EXLINE et al., Defendants and Appellants.

■■■■■■■■■■

**COUNSEL**

McCormick, Barstow, Sheppard, Wayte & Carruth and Timothy J. Buchanan for Defendants and Appellants.

Mehlman * Terbeek and Timothy A. Walker for Plaintiffs and Respondents.

**OPINION**

**NEEDHAM, J.**—Louis Exline, John Trahan, and Initiatek, Inc., appeal from an order denying their motion to compel arbitration under a contractual provision for binding arbitration. Appellants contend that the trial court erred in deciding that individual defendants, who were not signatories to a contract containing an arbitration provision but were sued as alter egos of a corporate defendant who was a signatory, may not compel another signatory party to arbitrate the controversies raised in the complaint. We agree with appellants and reverse the order.

## I. FACTS AND PROCEDURAL HISTORY

Respondent Philip Rowe (Rowe) filed a verified complaint on March 21, 2006, asserting causes of action in his individual capacity and in a derivative capacity in the name of Initiatek, Inc. (Initiatek), against appellants Louis Exline (Exline), John Trahan (Trahan) and Initiatek.

### A. Rowe's Complaint and the Subject Contract

Rowe's complaint alleged the following. Initiatek was a corporation existing from October 9, 2001, until August 12, 2004. Rowe was a founder, chief executive officer, and director of Initiatek from October 9, 2001, until July 17, 2003. Exline and Trahan were founders, shareholders, and directors of Initiatek throughout its existence.

In September 2003, Rowe and Initiatek entered into a "Confidential Settlement Agreement and General Release" (Agreement), a copy of which Rowe attached to the complaint. Rowe alleged that he entered into the Agreement with Exline and Trahan, although the Agreement itself recites that he entered into it with Initiatek. According to the signature lines on the Agreement, Rowe was signing as an individual, and Trahan and Exline were signing on behalf of Initiatek, as its secretary and CEO, and its president and COO, respectively.

Under the Agreement, Rowe was to transfer his ownership interests in Initiatek to the corporation effective July 17, 2003, and to resign as a corporate officer. In return, Rowe was to receive $428,500 in installment payments, with the last installment of $175,000 due by September 10, 2005.

The Agreement contains an arbitration clause, which reads as follows: "18. **Dispute Resolution**: All disputes under this Agreement shall be subject to mandatory arbitration. The costs of the arbitration shall be determined by the arbitrator. The parties shall agree on the selection of an arbitrator. If the parties cannot agree on an arbitrator, then the arbitration shall proceed with an arbitrator from the Judicial Arbitration and Mediation Services, Inc. ('JAMS') pursuant to the applicable rules of JAMS. Attorney's fees may be awarded to the prevailing party in any dispute under this Agreement." (Original boldface & underscoring.) The Agreement also provides that it is to be construed and interpreted in accordance with California law.

In August 2004, Exline and Trahan signed and filed a certificate of dissolution of Initiatek with the California Secretary of State. On the date of its dissolution, Initiatek's accounts receivable were "in excess of $175,000," and upon its dissolution its assets were "distributed to the shareholders," Exline and Trahan. Rowe was not paid the $175,000 installment due on September 10, 2005, notwithstanding his demand. Around the September 10 due date, counsel for Exline and Trahan informed Rowe's counsel that Initiatek had been reincorporated and there was no money to pay the final installment under the Agreement.

The complaint alleges four causes of action. The first cause of action is for breach of contract against Initiatek, Exline, and Trahan, based on an alter ego theory. In paragraph 15, Rowe alleges: "Defendant INITIATEK corporation was the alter ego of DEFENDANT TRAHAN and DEFENDANT EXLINE and the obligations of defendant INITIATEK corporation as set forth above are also the obligations of DEFENDANT TRAHAN and DEFENDANT EXLINE." Among the facts alleged to support the alter ego theory is the following: "Subsequent to January of 2003, defendant INITIATEK corporation was never intended to have and never has had any true corporate

existence. The sole purpose for the organization of defendant INITIATEK corporation became to act as a device by which [Exline and Trahan] could evade their contractual obligations to third parties and to ROWE by causing defendant INITIATEK corporation to enter into contracts through which [Exline and Trahan] could carry on their own business without personal liability." Based on the alter ego theory, it is alleged that Exline and Trahan are individually liable for the $175,000 debt under the Agreement, plus interest and costs.

The second cause of action is also against all three named defendants. It alleges that, in violation of Corporations Code section 1903, subdivision (c), Initiatek failed to provide proper notice to Rowe of the winding up of Initiatek. As a result, Rowe was precluded from adequately monitoring and protecting the expected payment of $175,000 by, among other things, notifying the Secretary of State that the certificate of dissolution contained a false statement. This second cause of action, like the breach of contract claim, seeks recovery of the $175,000 owed under the Agreement, plus interest and costs.

The third cause of action is a derivative claim brought by Rowe, on behalf of the corporation, against Trahan and Exline as directors. It alleges that Initiatek owed Rowe $175,000 under the Agreement, Rowe's claim arose before Initiatek's dissolution, Rowe did not consent to the dissolution, and directors Exline and Trahan are liable for the improper distribution of Initiatek's assets under Corporations Code section 316, subdivision (a). Like the breach of contract claim, this cause of action seeks recovery of the $175,000 owed under the Agreement, plus interest and costs.

The fourth cause of action is another derivative claim brought by Rowe on behalf of the corporation, against Trahan and Exline as shareholders, alleging improper distribution of assets in violation of Corporations Code sections 2009 and 2011. This cause of action is also expressly asserted "pursuant to [the Agreement]" and seeks contractual damages of $175,000 plus interest and costs.

### B. *Appellants' Motion to Compel Arbitration*

Exline, Trahan, and Initiatek filed a motion to compel arbitration and to stay the court proceedings pending the arbitration. They argued that Initiatek could compel arbitration as a signatory to the Agreement containing the arbitration provision, and Exline and Trahan could compel arbitration as Initiatek's alleged alter egos. Rowe countered that only signatory Initiatek could enforce the arbitration clause.

After a hearing, the court denied the motion by written order. The court found that Rowe was obligated under the Agreement to arbitrate his claims

against Initiatek, but he never signed a contract requiring him to arbitrate his claims against Exline and Trahan. While recognizing that "a party to an arbitration agreement can be compelled to arbitrate claims against third parties [nonsignatories] under certain circumstances," the court found that those circumstances were not present and Rowe could not be compelled to arbitrate his claims against Exline and Trahan. Allowing arbitration against Initiatek to proceed at the same time as court proceedings against Exline and Trahan, the court observed, would create a risk of conflicting rulings on common issues of law and fact, and ordering a stay of the court proceedings pending an arbitration would not promote judicial economy. The court therefore exercised its "discretion under California law to 'refuse to enforce the arbitration agreement' as against Initiatek, the only party bound by that agreement. (Cal. Code Civ. Proc., section 1281.2, subd. (c) [last paragraph].)" The court concluded: "All of plaintiff's claims against all three defendants shall be tried to judgment in this Superior Court action."

This appeal followed.

## II. *DISCUSSION*

■ A strong public policy favors the arbitration of disputes, and doubts should be resolved in favor of deferring to arbitration proceedings. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97 [99 Cal.Rptr.2d 745, 6 P.3d 669]; *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899].)

Appellants contend the trial court erred in denying their motion to compel arbitration because Exline and Trahan, although not signatories to the Agreement, are alleged to be alter egos of signatory Initiatek. As such, appellants argue, they can compel the arbitration of the controversies in the complaint and the court erred in relying on Code of Civil Procedure section 1281.2, subdivision (c), to deny the arbitration.[1]

In light of the parties' debate on the point, we begin our discussion by clarifying the appropriate analytical steps and the standard of appellate review applicable to each. Section 1281.2 generally mandates arbitration of all claims that are subject to an enforceable arbitration agreement. The statute reads in part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court *shall* order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement . . . exists," except in circumstances set forth in the statute. (§ 1281.2, italics added.)

---

[1] Except where indicated otherwise, all statutory references are to the Code of Civil Procedure.

There is no dispute in this case that the arbitration clause in the Agreement is enforceable. Instead, the threshold question is *who* may enforce it: whether any or all of the petitioning parties—Exline, Trahan, or Initiatek—can enforce the arbitration clause as parties to the Agreement. The trial court ruled that only Initiatek could, as signatory to the Agreement. Whether and to what extent Exline and Trahan can also enforce the arbitration clause is a question of law, which we review de novo. (*Turtle Ridge Media Group, Inc. v. Pacific Bell Directory* (2006) 140 Cal.App.4th 828, 832–833 [44 Cal.Rptr.3d 817] (*Turtle Ridge*).)

If Exline, Trahan, or Initiatek can enforce the arbitration agreement, the next question is whether there is an exception to otherwise mandatory arbitration. Subdivision (c) of section 1281.2 provides an exception where "[a] party to the arbitration agreement is also a party to a pending court action . . . with a third party, arising out of the same transaction or series of transactions and there is a possibility of conflicting rulings on a common issue of law or fact." The trial court ruled that this exception applied, finding that a party to the arbitration agreement (Rowe) was also a party to the pending court action with third parties (Exline & Trahan), arising out of the same transaction or series of transactions (the Agreement), and conflicting rulings on common issues of law and fact were possible because all three defendants were parties to the first and second causes of action. Whether Exline and Trahan were "third part[ies]," such that section 1281.2, subdivision (c) applied, is also a question of law that we review de novo.

The final step in the analysis pertains if, in fact, subdivision (c) of section 1281.2 applies. Section 1281.2 reads in part: "If the court determines that a party to the arbitration is also a party to litigation in a pending court action . . . with a third party as set forth under subdivision (c) herein, the court (1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action or special proceeding; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action or special proceeding." In the matter before us, the trial court selected the first option and refused to compel arbitration. The court's decision as to how to proceed in a situation governed by section 1281.2, subdivision (c), is reviewed for an abuse of discretion. (See *Henry v. Alcove Investment, Inc.* (1991) 233 Cal.App.3d 94, 101–102 [284 Cal.Rptr. 255].)

We address these issues to the extent necessary to resolve the appeal.

### A. *Can Exline and Trahan Enforce the Arbitration Agreement?*

■ As a general matter, only signatories to an arbitration agreement may enforce it. (See, e.g., *County of Contra Costa v. Kaiser Foundation Health Plan, Inc.* (1996) 47 Cal.App.4th 237, 245 [54 Cal.Rptr.2d 628] ["Even the strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement or who have not authorized anyone to act for them in executing such an agreement."].) There are limited exceptions to this rule, as we discuss next.

#### 1. *Alter Ego Exception (First Cause of Action)*

Exline and Trahan are sued in the first cause of action for breach of contract under an alter ego theory. The complaint alleges that "the individuality of defendant INITIATEK corporation or its separateness from DEFENDANT TRAHAN and DEFENDANT EXLINE has ceased," and the corporation was not intended to have any true corporate existence "[s]ubsequent to January of 2003."

■ Alter ego theory posits that the individual defendants are inseparable from the corporation and in legal effect are the corporation. (*D. N. & E. Walter & Co. v. Zuckerman* (1931) 214 Cal. 418, 420 [6 P.2d 251] [alter ego theory requires that the corporation and individual should be considered as one].) The corporate form is disregarded and the entity is considered an association of individuals. (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 300 [216 Cal.Rptr. 443, 702 P.2d 601]; see *Riddle v. Leuschner* (1959) 51 Cal.2d 574, 580–581 [335 P.2d 107] [shareholders may be liable as principals or partners].)

No reported California case has decided whether a nonsignatory sued as the alter ego of a signatory can enforce an arbitration provision. California courts do recognize, however, that a nonsignatory sued as an *agent* of a signatory may enforce an arbitration agreement. In *Dryer v. Los Angeles Rams* (1985) 40 Cal.3d 406, 418 [220 Cal.Rptr. 807, 709 P.2d 826] (*Dryer*), the plaintiff filed a lawsuit against the Rams, as well as individuals sued in their capacities as " 'owners, operators, managing agents, and in control [*sic*] of' " the Rams, under a contract containing an arbitration provision. (*Id.* at pp. 409–410, 418.) The individual defendants were alleged to have been party to the contract and breached the contract. (*Id.* at p. 418.) The trial court denied a petition to compel arbitration as to the individual defendants, on the ground they were not signatories to the contract. (*Id.* at pp. 411, 418.) The Court of Appeal reversed, holding that: "If, as the complaint alleges, the individual defendants, though not signatories, were acting as agents for the Rams, then they are entitled to the benefit of the arbitration provisions." (*Id.* at p. 418.)

A nonsignatory who is the agent of a signatory can even be *compelled* to arbitrate claims against his will. In *Harris v. Superior Court* (1986) 188 Cal.App.3d 475, 477–478 [233 Cal.Rptr. 186] (*Harris*), the plaintiffs were enrolled in a health services program that required arbitration of disputes. (*Id.* at p. 477.) After they sued a hospital, a physician, and others for malpractice, the hospital's motion to compel arbitration was granted. The plaintiffs then sought to compel the physician to arbitrate as well. (*Id.* at p. 477.) The trial court denied the motion because the physician had not signed the enrollment form containing the arbitration provision. The Court of Appeal reversed, holding that the physician's relationship as an employee of the corporation was "sufficient to bind [him] to the arbitration agreement which named [the corporation]." (*Id.* at p. 478.)[2]

■ Rowe does not refute the law permitting a nonsignatory to compel arbitration if sued as a signatory's agent. Nor does he provide any persuasive reason why a nonsignatory should be precluded from compelling arbitration if sued as a signatory's alter ego. Indeed, while an agent is one who acts on behalf of a corporation, an alter ego is one who, effectively, *is* the corporation. By suing Exline and Trahan for breach of the Agreement on the ground that they are Initiatek's alter egos, and even alleging in the complaint that Exline and Trahan entered into the Agreement, Exline and Trahan are "entitled to the benefit of the arbitration provisions." (*Dryer, supra*, 40 Cal.3d at p. 418.)[3]

---

[2] The court in *Harris* stated that the physician could be compelled to arbitrate the claim against him also on the ground that he was a third party beneficiary of the arbitration provision and because he accepted the benefits of the transaction and thereby implicitly consented to arbitration. (*Harris, supra*, 188 Cal.App.3d at p. 479.) The Agreement in paragraph 19(f) states that it inures to the benefit of Initiatek's representatives and successors, and mutual releases in paragraphs 8 and 9 bind and benefit Initiatek's officers and agents.

[3] Although we know of no published case expressly deciding under California law that alleged alter ego nonsignatories may enforce an arbitration provision, at least one California court has recognized the existence of this theory under federal arbitration law. (*Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262, 268 [25 Cal.Rptr.3d 440]; see discussion, *post*.) Some support for the proposition under California law may also be gleaned from *Retail Clerks Union v. L. Bloom Sons Company, Inc.* (*L. Bloom Sons*) (1959) 173 Cal.App.2d 701 [344 P.2d 51]. There, plaintiff union entered into a collective bargaining agreement with L. Bloom Sons Company, Inc. (L. Bloom Sons). The plaintiff alleged that L. Bloom Sons breached the agreement, which contained an arbitration clause, and that L. Bloom Sons should be compelled to arbitrate the dispute. (*Id.* at p. 702.) L. Bloom Sons responded that the store at which the alleged breach occurred was owned by a separate company, Bloom's Salinas, Inc., which was not a signatory to the arbitration agreement or a party to the case. (*Ibid.*) The court held that the matter should not be heard in arbitration, because it involved the interests of Bloom's Salinas, Inc., which had not consented to arbitration. (*Id.* at p. 703.) Although the plaintiff maintained that nonsignatory Bloom's Salinas, Inc. was the alter ego of the signatory L. Bloom Sons, the court ruled that the alter ego relationship would have to be established before the nonsignatory could be compelled to arbitrate. (*Ibid.*) Implicit in this holding is that a nonsignatory who *was* the alter ego of a signatory *could* be compelled to arbitrate.

The alter ego rationale, however, applies only to the first cause of action for breach of contract. The other three causes of action asserted against Exline and Trahan allege violations of Corporations Code section 1903, subdivision (c) (corporate board is obligated to send notice to creditors of the voluntary winding up of the corporation); Corporations Code section 316, subdivision (a) (directors are jointly and severally liable for their approval of corporation's improper distribution of assets); and Corporations Code sections 2009 (corporation may recover from shareholder for corporate assets received in the course of the winding up of the corporation, where distribution was made without payment or provision for an existing debt) and 2011 (where corporation has been dissolved, shareholders may be sued for cause of action arising prior to the dissolution). The alter ego theory does not pertain to these causes of action. If Exline and Trahan cannot compel arbitration of these claims, the claims would have to be resolved in the court proceedings, and the trial court would have discretion to stay the arbitration of the contract claim pending the resolution of the statutory claims. (§ 1281.2, subd. (c), 3d par.) We need not consider this possibility further, however, because we conclude that the statutory claims against Exline and Trahan *are* subject to arbitration as well.[4]

### 2. *Equitable Estoppel (All Causes of Action)*

In *Boucher v. Alliance Title Co., Inc., supra*, 127 Cal.App.4th 262 (*Boucher*), the plaintiff sued Alliance Title Company, Inc. (Alliance), and Financial Title Company (Financial) in connection with a purported breach of his employment agreement with Financial. (*Id.* at p. 265.) Both defendants petitioned to compel arbitration under an arbitration clause in the employment agreement. The trial court denied Alliance's petition, on the ground that it was not a signatory to the employment agreement. The Court of Appeal reversed. Applying federal law, the appellate court identified five theories upon which a nonsignatory can be compelled to arbitrate a dispute: " '1) incorporation by reference [in another contract to which it is a signatory]; 2) assumption [by conduct]; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel.' " (*Id.* at p. 268, quoting *Thomson-CSF, S.A. v. American Arbitration Ass'n* (2d Cir. 1995) 64 F.3d 773, 776.) The *Boucher* court concluded that, under federal law, a signatory to an arbitration clause may be compelled to arbitrate against a nonsignatory when the relevant causes of action rely on and presume the existence of the contract containing the

---

[4] The second, third, and fourth causes of action are within the scope of the arbitration clause, which broadly requires: "All disputes under this Agreement shall be subject to mandatory arbitration." This would include attempts to recover sums purportedly due under the Agreement, whether the legal theory is breach of contract, tort, or violation of a statute. (See *Dryer, supra*, 40 Cal.3d at p. 418, fn. 12 [tort claims are subject to arbitration clause when they arise out of the contractual relationship].) The parties do not dispute that the statutory causes of action are arbitrable with respect to Initiatek.

arbitration provision. (*Boucher, supra,* at p. 269.) In other words, a plaintiff who relies on the contractual terms in a claim against a nonsignatory may be precluded from repudiating the arbitration clause in the contract. (*Id.* at p. 272.) The court held that the plaintiff in *Boucher* was estopped from avoiding arbitration with Alliance, because his claims against Alliance relied on, made reference to, and presumed the existence of the employment agreement. (*Id.* at pp. 272–273.)

■ Other California courts, applying federal law, have embraced the estoppel theory, holding that a signatory plaintiff who sues on a written contract containing an arbitration clause may be estopped from denying arbitration if he sues nonsignatories as related or affiliated persons with the signatory entity. (*Turtle Ridge, supra,* 140 Cal.App.4th at p. 833; *Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705, 1713–1714, 1716–1717 [1 Cal.Rptr.3d 328] (*Metalclad*).) As the court in *Turtle Ridge* explained: " '[T]he equitable estoppel doctrine applies when a party has signed an agreement to arbitrate but attempts to avoid arbitration by suing nonsignatory defendants for claims that are " 'based on the same facts and are inherently inseparable' " from arbitrable claims against signatory defendants.' " (*Turtle Ridge, supra,* at p. 833, quoting *Metalclad, supra,* at pp. 1713–1714.) Claims that rely upon, make reference to, or are intertwined with claims under the subject contract are arbitrable. (*Boucher, supra,* 127 Cal.App.4th at pp. 269–270.)

■ Here, Rowe sued nonsignatories Exline and Trahan, in the first cause of action under the alter ego theory, as though they were one and the same with the corporation that signed the Agreement. This claim obviously relies upon the Agreement. The statutory claims in the second, third, and fourth causes of action also rely upon, make reference to, presume the existence of, and are intertwined with the Agreement. (See *Boucher, supra,* 127 Cal.App.4th at pp. 269–270, 272–273.) All three seek recovery of the $175,000 owed under the Agreement. Moreover, Rowe specifically alleged in the complaint that the third and fourth causes of action were "pursuant to THE CONTRACT [Agreement] which was entered into in September of 2003." The second, third, and fourth causes of action against Exline and Trahan, as well as the breach of contract claim, are subject to arbitration.

■ Rowe's arguments to the contrary are not persuasive. First, he contends that appellants are precluded from arguing equitable estoppel because they raised it for the first time on appeal. Appellants admit they did not pursue an estoppel theory by that name in the trial court. Appellants did argue generally, however, that the manner in which Rowe alleged his claims— including employing an alter ego theory—subjected the claims to arbitration. Moreover, even where a legal argument was not raised in the trial court, we

have discretion to consider it where, as here, it involves a legal question applied to undisputed facts. (*Resolution Trust Corp. v. Winslow* (1992) 9 Cal.App.4th 1799, 1810 [12 Cal.Rptr.2d 510].)[5] We will exercise that discretion here, to ensure a result that is equitable and in line with the fundamental public policy favoring arbitration.

■ Second, Rowe contends that we should reject the estoppel argument because *Boucher, Turtle Ridge*, and *Metalclad* involved arbitration agreements governed by the Federal Arbitration Act (FAA) and applied federal rather than California law. Rowe's argument is unconvincing. Merely because a legal concept emanates from federal jurisprudence does not necessarily make it unreasonable, inapplicable, or unpersuasive in a California case. The equitable estoppel theory espoused in *Boucher, Turtle Ridge*, and *Metalclad* did not arise from a federal statute or case law that conflicts with California's arbitration law. Indeed, both federal and California arbitration law favor the arbitration of disputes. Furthermore, the notion of estoppel is familiar to California law, and California's concern for equity is just as strong as that of federal law. Rowe demonstrates no reason why California jurisprudence should reject the equitable principle that a plaintiff who seeks to hold nonsignatories liable for damages under a contract, by alleging they are unified with the signatory entity, cannot also adopt the inconsistent position that the arbitration provision in the contract is unenforceable by or against those individuals. This is the very type of equity underlying *Dryer*, which was decided under California law.

It is Rowe who, by the manner in which he crafted his claims in the litigation, subjected himself to the arbitration of those claims. We find the equitable estoppel principle, despite its initial application in federal law, to be appropriately applied in the matter before us as well.[6]

---

[5] Rowe contends that the estoppel theory does not apply the law to undisputed facts, because there is a factual dispute as to whether Rowe intended to avoid arbitration in filing his complaint against nonsignatories. Rowe is incorrect. As we discuss, *post*, in the text, the question is not his intention, but the nature of the claims as a matter of law.

[6] Rowe argues that the court in *Henry v. Alcove Investment, Inc., supra*, 233 Cal.App.3d 94, ruled that federal equitable theories regarding nonsignatories were inapplicable to California law because a California court can consider equitable matters in exercising its discretion under section 1281.2, subdivision (c). Rowe is incorrect. The court's discretion under section 1281.2, subdivision (c) does not come into play until it is ascertained that the subdivision applies, which requires the threshold determination of whether there are nonarbitrable claims against at least one of the parties to the litigation (e.g., a nonsignatory). *Henry* is not to the contrary. There, one of several defendants intended to submit the plaintiff's claims to arbitration. The plaintiff sought an order staying the arbitration because he was not bound by the arbitration clause. (233 Cal.App.3d at p. 98.) The trial court ordered a stay under section 1281.2, subdivision (c), because there was a possibility of conflicting rulings on common questions of fact or law if the plaintiff was forced to arbitrate his claims against one of the defendants and simultaneously prosecute his claims against the other defendants in court. (233 Cal.App.3d at

 Third, Rowe contends the estoppel argument is meritless because it was not shown that Rowe *intended* to avoid arbitration by suing nonsignatory defendants for claims inherently inseparable from arbitrable claims against signatories. Rowe explains that he sued Exline and Trahan when Initiatek had already been dissolved, the assets had been distributed to Exline and Trahan, and Trahan and Exline were the only realistic source of recovery. However, the estoppel doctrine in this context does not require a conscious or subjective intent to avoid arbitration, but turns upon the nexus between the contract and the causes of action asserted. (*Boucher, supra,* 127 Cal.App.4th at p. 272 ["The focus is on the nature of the claims asserted by the plaintiff against the nonsignatory defendant."].)

Rowe's reliance on *Benasra v. Marciano* (2001) 92 Cal.App.4th 987 [112 Cal.Rptr.2d 358], is also misplaced. There, the president of one corporation (PLB) sued the president of another corporation (Guess) for libel. The defendant sought to compel arbitration based on license agreements between PLB and Guess, which contained an arbitration clause. He was unable to do so, however, because the plaintiff had signed the agreements only in his capacity as a corporate officer, the plaintiff asserted tort claims that were independent of the license agreements, and the plaintiff neither referred to the license agreements in his claims nor sought to benefit from them. (*Id.* at pp. 990–991.) In addition, the court found there was no evidentiary support for the argument that the plaintiff was a third party beneficiary of the license agreements. (*Id.* at pp. 991–992.) In the matter before us, by contrast, Rowe's claims are based on the Agreement containing the arbitration clause, in that they seek recovery of the sum due under the Agreement.

Lastly, Rowe argues that Exline and Trahan cannot enforce the arbitration provision, because they did not agree to arbitration at the time of contracting, and the facts underlying the alter ego allegation arose *after* the execution of the Agreement. Specifically, Rowe argues, in entering into the Agreement Rowe did not bargain for a term binding him to arbitrate against Exline and Trahan. Further, he urges, Exline and Trahan should not be allowed to benefit from their alter ego status, by using their own wrongdoing to invoke an arbitration clause for which they gave nothing.

 We disagree. We recognize that arbitration should not be imposed if it would be contrary to a party's reasonable expectation or result in loss or

---

p. 101.) On appeal, the court upheld the ruling, rejecting the argument that the stay was an abuse of discretion under section 1281.2, subdivision (c) because a party could always avoid arbitration by suing a nonsignatory. (*Henry, supra,* at pp. 101–102.) There was no question on appeal whether the plaintiff was, in fact, subject to the arbitration clause due to estoppel, agency, or any other equitable theory; nor was there any question that section 1281.2, subdivision (c) applied.

inequity. (See *Harris, supra,* 188 Cal.App.3d at p. 479.) Arbitration of the claims against Exline and Trahan is not unfair to or unexpected by Rowe, however, because (1) he is the one who decided the theories on which to sue Exline and Trahan; (2) he alleged that the Agreement was entered into with Exline and Trahan; and (3) he consented to arbitrate the claims against Initiatek anyway. Nor does arbitration provide a windfall to Exline and Trahan: although they might not have bargained for an arbitration provision in their favor at the time they signed the Agreement on Initiatek's behalf, neither did they bargain for a lawsuit seeking to hold them liable for Initiatek's breach of the Agreement. Conversely, to the extent they contemplated liability for Initiatek's breach as its directors, officers, or shareholders, it would be reasonable for them also to contemplate availing themselves of the arbitration provision.

Exline and Trahan, as well as Initiatek, were entitled to enforce the arbitration clause as to all the claims asserted against them by Rowe.

### B. *Did Subdivision (c) Apply?*

Section 1281.2, subdivision (c), on which the trial court relied to deny arbitration, provides an exception to mandatory arbitration where "[a] party to the arbitration agreement is also a party to a pending court action . . . *with a third party,* arising out of the same transaction or series of transactions and there is a possibility of conflicting rulings on a common issue of law or fact." (Italics added.)

As our Supreme Court has explained: " 'Section 1281.2(c) addresses the peculiar situation that arises when a controversy also affects claims by or against *other parties not bound by the arbitration agreement.* The California provision giving the court discretion not to enforce the arbitration agreement under such circumstances . . . avoid[s] potential inconsistency in outcome as well as duplication of effort . . . .' " (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 393 [25 Cal.Rptr.3d 540, 107 P.3d 217], italics added.)

Because Trahan and Exline may enforce arbitration of the claims against them, they are not "third part[ies]" within the meaning of section 1281.2, subdivision (c). Section 1281.2, subdivision (c) therefore does not apply, and the trial court erred in denying arbitration on this ground. Furthermore, because section 1281.2, subdivision (c) does not apply to this case as a matter of law, we need not determine whether the trial court's selection among the alternative dispositions offered by the subdivision was an abuse of discretion.

### III. *DISPOSITION*

The order is reversed, and the matter is remanded to the trial court for entry of a new and different order granting appellants' motion to compel arbitration. Costs on appeal to appellants.

Jones, P. J., and Simons, J., concurred.