Filed 2/19/16  Ramirez v. Gomez CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARIO H. RAMIREZ,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>EDGARDO GOMEZ et al.,<br><br>    Defendants and Appellants. | B261783<br><br>(Los Angeles County<br>Super. Ct. No. BC551901) |

APPEAL from an order of the Superior Court of Los Angeles County, Michael P. Linfield, Judge.  Affirmed.

Krane & Smith and Benjamin J. Smith for Defendants and Appellants.

Roy Legal Group and Frank P. Agello for Plaintiff and Respondent.

## INTRODUCTION

Plaintiff Mario H. Ramirez entered into an investment agreement with defendants Edgardo Gomez and Derek Martin through which he agreed to invest $50,000 in defendant Martin Development, LLC, a.k.a. Martin Enterprises (the company), in return for an equity position and portion of the company's profits. According to Ramirez, Gomez and Martin represented that the company had a franchise relationship with non-party GlobalTranz, Inc. (GlobalTranz), a transportation management company. The investment agreement included a clause requiring the parties to arbitrate any legal dispute "regarding any influence on the [c]ompany or its business operations."

About one year after executing the agreement, Ramirez sued Gomez, Martin, and the company (collectively, defendants) for breach of the investment agreement, misuse of his investment for personal expenditures, and intentional misrepresentation about the existence of a franchise relationship. Gomez filed a motion to compel arbitration of Ramirez's claims. The trial court denied the motion. We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

### 1. The Investment Agreement

In August 2013, Gomez and Martin asked Ramirez to invest $50,000 in the company. Gomez and Martin claimed the company had a franchise relationship with a larger logistics and transportation management company, GlobalTranz. They told Ramirez that his investment would be used to hire additional employees to generate more revenue for the company. Gomez and Martin also claimed that they were shareholders in an existing corporation, Martin Business Enterprises.

On August 30, 2013, Ramirez, Gomez, and Martin executed the "Martin Development, LLC Investor Agreement" (the investment agreement), through which Ramirez agreed to invest $50,000 in the company. Under the agreement, $30,000 of Ramirez's investment would be disbursed immediately to the company, with the remaining $20,000 to be held in a separate account under investor control. In exchange for his investment, Ramirez would receive a 20% interest in the company's profit until

his investment was repaid in full, at which point he would retain a "10% equity position and split of profit." Under the investment agreement, the company would begin making monthly installment payments to Ramirez 90 days after the investment date, with the investment to be repaid in full within 12 months of the investment date.

The investment agreement designates Ramirez, Gomez, and Martin as "Key Men" of the company. It defines "Key Men" as the company's "owners and stock holders." The investment agreement also contains a "Dispute Resolution" clause which provides: "Should there be any legal dispute between Key Man members regarding any influence on the Company or its business operations, it is agreed to be settled via Arbitration by a neutral party and professional Arbitrator as licensed by the California Board of Arbitrators in lieu of any Civil Court proceedings."

### 2. Defendants' Alleged Misuse of Ramirez's Money

According to Ramirez, after he executed the investment agreement, he discovered that Martin Business Enterprises, the entity in which Gomez and Martin claimed to be part owners, did not exist when he executed the agreement. Nevertheless, Gomez and Martin opened two bank accounts in which they deposited Ramirez's investment, one in the name of "Martin Development, LLC," and the other in the name of "Martin Business Enterprises." On September 20, 2013, a business named "Martin Business Enterprises" was registered with the California Secretary of State.

Ramirez alleged that between September and December 2013, Gomez and Martin used his investment for non-business related expenses, including personal meals and unidentified cash withdrawals from the recently opened accounts. When Ramirez confronted Gomez and Martin about the expenditures, they claimed that they had used Ramirez's investment for business purposes only.

On December 8, 2013, Ramirez, Gomez, and Martin amended the investment agreement to include a "Ownership Draw Guidelines" provision, which required their unanimous consent before any money could be drawn out of the company's funds. On the same day, Ramirez agreed to loan the company $2,000 to pay the company's rent for December 2013. Ramirez believed he would forfeit his capital investment if he did

3

not loan the company money. Ramirez claimed that defendants misused his $2,000 loan because they used it to pay the company's employees' wages instead of paying the company's rent.

As of July 2014, the company had yet to make any payments to Ramirez, and defendants had refused to repay any portion of Ramirez's investment.

### 3. The Lawsuit and Motion to Compel Arbitration

On July 14, 2014, Ramirez filed a lawsuit naming Gomez, Martin, and the company as defendants.[1] The complaint alleges causes of action for restitution, breach of contract, breach of the covenant of good faith and fair dealing, account stated, open book account, money had and received, breach of fiduciary duty, fraud, conversion, and accounting. Ramirez seeks recovery for defendants' alleged misuse of Ramirez's $50,000 investment and $2,000 loan, and punitive damages in the amount of $156,000.

On October 23, 2014, Gomez filed a motion to compel arbitration and stay litigation pending arbitration under Code of Civil Procedure sections 1281.2 and 1281.4 (motion to compel). He argued the investment agreement's arbitration clause requires the parties to arbitrate all of Ramirez's claims because they arise out of defendants' performance under the agreement. Gomez also argued that the arbitration clause is so broadly worded that any dispute between Ramirez and defendants, including tort claims, is subject to arbitration. In his opposition, Ramirez argued his claims are not subject to arbitration because they do not concern defendants' influence on the company or its business operations. Ramirez also argued the arbitration clause is ambiguous and therefore cannot govern his claims.

The trial court denied Gomez's motion.[2] The court found that the arbitration clause does not cover all of Ramirez's claims because they are based on defendants'

---

[1] The complaint includes an "alter-ego" provision, alleging that the company and Martin Business Enterprises are the alter egos of Gomez and Martin.

[2] Only the court's written ruling is included in the record; there is no record of the oral proceedings of the hearing on Gomez's motion to compel arbitration.

4

alleged misuse of his investment for personal reasons, and not on defendants' influence on the company or its business operations. The court also noted that the arbitration clause is too narrowly-worded to cover Ramirez's claims, contrasting it with more common, broadly-worded provisions, such as ones that require arbitration of " 'any claim arising from or related to [the parties'] agreement.' "

## DISCUSSION

Before the trial court, Gomez essentially took an "all or nothing" approach to his motion to compel; he argued that all of Ramirez's claims are subject to arbitration. Specifically, he never argued that if some, but not all, of Ramirez's claims are subject to arbitration, the court should compel arbitration of only those arbitrable claims. In fact, Gomez never made any serious attempt to interpret the arbitration clause in the investment agreement to determine which, if any, of Ramirez's claims fall within the scope of the clause. Gomez did not attempt to define what the term "influence" means or what would constitute influence on the company or its business operations. Rather, he argued only that the clause is identical to more common arbitration clauses that encompass "any" dispute arising out of or related to the underlying agreement. Gomez took the same position on appeal.

At oral argument, we requested the parties to submit supplemental letter briefs addressing the following issues: (1) whether, in the event we conclude that some, but not all, of Ramirez's claims fall within the scope of the arbitration clause, the trial court erred in denying Gomez's motion to compel when Gomez requested only that the court compel arbitration of all of Ramirez's claims, and he did not request the court to compel arbitration of only the arbitrable claims; and (2) whether Gomez forfeited any claim on appeal that the court should have ordered arbitration of only the arbitrable claims, when Gomez did not request such relief below.

Only Gomez filed a supplemental letter brief. However, he addresses only the first issue raised at oral argument; he does not address whether he forfeited any argument that the parties should be ordered to arbitrate some, but not all, of Ramirez's claims. As we explain below, Gomez did not preserve this argument for appeal.

5

## I.    Applicable Legal Principles

An "order denying a petition to compel arbitration, like any other judgment or order of a lower court, is presumed to be correct, and all intendments and presumptions are indulged to support the order on matters as to which the record is silent." (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 88 (*Gutierrez*).)  The appellant has the burden of demonstrating that the trial court erred.  (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140-1141 (*Ketchum*); *People v. Giordano* (2007) 42 Cal.4th 644, 666 [the appellant must affirmatively demonstrate error].)  The appellant may not "rest on the bare assertion of error but must present argument and legal authority on each point raised." (*Boyle v. CertainTeed Corp.* (2006) 137 Cal.App.4th 645, 649.)  "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

In addition, the appellant also must establish that he raised a specific challenge in the trial court before he may raise that challenge on appeal.  " ' " '[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court.'  Thus, 'we ignore arguments, authority, and facts not presented and litigated in the trial court.  Generally, issues raised for the first time on appeal which were not litigated in the trial court are waived.  [Citations.]' " [Citation.]  "Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider.  [Citation.]  In our adversarial system, each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack . . . . " [Citation.]' [Citation.]" (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564 (*Premier Medical*).)

## II. Gomez Has Failed to Demonstrate the Trial Court Erred in Denying his Motion to Compel

Gomez contends all of Ramirez's claims fall within the scope of the arbitration clause at issue here because the clause is so broadly-worded that it encompasses any dispute arising out of, or related to, the investment agreement. He argues that because all of Ramirez's claims arise out of the investment agreement or are related to the parties' conduct under the agreement, the trial court should have compelled arbitration of all of Ramirez's claims. We disagree. The arbitration clause is much more narrowly-worded than Gomez contends. Although some of Ramirez's claims fall within the clause's scope, at least one of his claims, namely the cause of action for fraud, falls outside that scope. Because Gomez did not request the trial court to compel arbitration of only those claims that fall within the clause's scope, the trial court did not err in denying Gomez's request to compel arbitration of all of Ramirez's claims.

An analysis of whether a particular dispute falls within an arbitration clause depends largely on the breadth of the clause. (*Bono v. David* (2007) 147 Cal.App.4th 1055, 1067 (*Bono*).) A clause that calls for arbitration of "any" dispute arising out of or related to the parties' agreement or relationship will be interpreted broadly to cover all disputes that have a significant relationship to, or are "rooted in," the agreement or relationship. (See *Buckhorn v. St. Jude Heritage Medical Group* (2004) 121 Cal.App.4th 1401, 1407; *Vianna v. Doctors' Management Co.* (1994) 27 Cal.App.4th 1186, 1190.) By contrast, a clause that uses more narrow language will not be afforded as strong of a presumption in favor of arbitration. (See *Bono*, *supra*, 147 Cal.App.4th at pp. 1067-1068; see also Knight et al., Cal. Practice Guide, Alternative Dispute Resolution (The Rutter Group 2015) ¶ 5:223 ["More narrowly worded clauses invite litigation as to the scope of the arbitration agreement"].)

Here, Gomez argues the arbitration clause at issue is very broadly-worded, equating it to more common arbitration clauses that encompass "any" dispute arising out of or related to the underlying agreement. (See e.g., *Rowe v. Exline* (2007) 153 Cal.App.4th 1276, 1280 ["All disputes under this Agreement shall be subject to

mandatory arbitration"]; *Larkin v. Williams, Woolley, Cogswell, Nakazawa & Russell* (1999) 76 Cal.App.4th 227, 229 [" 'Any controversy or claim arising out of or relating to any provision of this Agreement or the breach thereof shall be settled by arbitration' "].)  Gomez argues that we should apply a strong presumption in favor of arbitration to the clause at issue here, as we would to such broadly-worded clauses, and conclude that all of Ramirez's claims fall within the scope of the clause because they "arise out of" or are "related to" the investment agreement.  Gomez's contentions ignore the actual language of the arbitration clause at issue here.  As noted by the trial court, the clause does not reference all disputes arising out of or related to the investment agreement.  Indeed, the clause makes no reference to the investment agreement.  Rather, it applies only to disputes concerning "influence on the Company or its business operations."  Accordingly, we must look to the usual and ordinary meaning of the clause's language to determine which of Ramirez's claims fall within the clause's scope.  (*Bono*, *supra*, 147 Cal.App.4th at p. 1063.)

As a preliminary matter, we note that the investment agreement does not define the term "influence."  The parties also did not introduce extrinsic evidence to help us interpret the term, and they do not attempt to define the term in their briefs.  Our own research has not revealed any case law defining the term when used in an arbitration clause.  Accordingly, we look to the dictionary to determine the usual and ordinary meaning of the term.  (See *Stamm Theatres, Inc. v. Hartford Casualty Ins. Co.* (2001) 93 Cal.App.4th 531, 539 [when construing a term in a contract or statute, courts often will look to a dictionary to ascertain the term's "ordinary" meaning].)  Oxford Dictionaries defines "influence" as "[t]he capacity to have an effect on the character, development, or behavior of someone or something, or the effect itself."  (Oxford Dictionaries <http://www.oxforddictionaries.com> (as of January 4, 2016).)  Mirriam-Webster provides as one definition of the term, "The power or capacity of causing an effect in indirect or intangible ways."  (Mirriam-Webster <http://www.mirriam-webster.com > (as of January 4, 2016).)  In view of these definitions, we interpret the term "influence" as used in the investment agreement to

mean an act or a decision that has an effect on, or can effect, the company or its business operations.

With these definitions in mind, we find that Ramirez's fraud cause of action does not fall within the arbitration clause's scope because it does not raise a dispute about any "influence" on the company or its business operations. Rather, the fraud cause of action raises a dispute about defendants' conduct during contractual negotiations, conduct which occurred before the company was formed and began operating. Notably, Ramirez claims that defendants induced him into executing the investment agreement by making a number of false representations during negotiations. He alleges that defendants claimed they were shareholders in a corporation that did not exist at the time of negotiations and that the company had a franchise agreement with GlobalTranz, Inc. when no such agreement existed. Because the fraud cause of action falls outside the scope of the arbitration clause, Ramirez cannot be compelled to arbitrate that claim. (*Mendez v. Mid-Wilshire Health Care Center* (2013) 220 Cal.App.4th 534, 540 [a party cannot be required to arbitrate any dispute which he has not agreed to submit to arbitration].)

We also find, however, that at least one of Ramirez's claims does fall within the scope of the arbitration clause because it raises disputes about the parties' "influence" on the company's operations. For example, in his claim for breach of contract, Ramirez alleges that defendants misused his initial investment. He alleges that defendants placed a portion of his investment in a bank account that was not under his control, in violation of the investment agreement's terms. He also alleges that defendants used his investment for personal expenditures, while also alleging that defendants claimed they used the investment for business purposes only, such as to pay wages, rent, and parking lot fees, and to purchase office supplies. In our view, these allegations raise a dispute about how defendants allocated Ramirez's investment in operating the company, a decision which would have an effect on the company's operations.

Our conclusion that at least one of Ramirez's claims falls within the arbitration clause's scope does not, however, mean that the trial court erred in denying Gomez's

9

motion to compel. As noted, until we requested supplemental briefing at oral argument, Gomez has consistently taken an "all or nothing" approach to his motion to compel. Before the trial court, he argued that all of Ramirez's claims are subject to arbitration, and he requested the court to compel arbitration of all of those claims. He never requested the court to compel arbitration of only some of Ramirez's claims in the event it found some, but not all, of Ramirez's claims fall within the arbitration clause's scope. He also has never attempted to interpret the actual terms of the arbitration clause or conduct separate analyses of Ramirez's individual claims to determine which ones fall within the clause's scope. Further, despite our request for briefing on the issue, Gomez failed to address whether he forfeited his contention that the trial court should have compelled arbitration of only those claims that fall within the arbitration clause's scope.[3] Accordingly, Gomez has not preserved that issue on appeal. (See *Premier Medical*, *supra*, 163 Cal.App.4th at p. 564.) Because the trial court correctly determined that at least one of Ramirez's claims falls outside the arbitration clause's scope, we affirm its order denying Gomez's motion to compel arbitration.

---

[3]     To the extent Gomez may have requested the court to compel arbitration of only some of Ramirez's claims at the hearing on the motion to compel arbitration, we have an inadequate record to evaluate whether such a claim was raised because there is no reporter's transcript, settled statement or agreed statement in the record. (See *Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416 [if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court must be affirmed].)

**DISPOSITION**

The order denying Gomez's motion to compel arbitration is affirmed.  Ramirez is awarded his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.

JONES, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.