[No. A021667. First Dist., Div. Three. Sept. 18, 1986.]

OUTDOOR SERVICES, INC., Plaintiff and Respondent, v. PABAGOLD, INC., Defendant and Appellant.

678

**COUNSEL**

Cohen & Jacobson and Lawrence A. Jacobson for Defendant and Appellant.

Stimmel & Stimmel, Lee D. Stimmel and Patricia Nichols for Plaintiff and Respondent.

## OPINION

**BARRY-DEAL, J.**—Pabagold, Inc. (Pabagold), appeals from an order confirming an arbitration award and judgment in favor of Outdoor Services, Inc. (Outdoor Services).[1] Pabagold argues that Outdoor Services was not a third party beneficiary of the contract between Pabagold and Mediasmith, an advertising agency, and therefore could not enforce the arbitration agreement contained in the contract. Pabagold also asserts that even if Outdoor Services was a third party beneficiary, it waived its rights under the arbitration agreement by filing a cross-complaint against Pabagold in an action brought by Gannett Outdoor Co., Inc., of Southern California (Gannett) against Outdoor Services. Finally, Pabagold argues that it was wrongfully denied a continuance of the arbitration hearing because its counsel withdrew six days before the hearing. We affirm the judgment.

### BACKGROUND

In March 1981, Pabagold entered into a written contract with Mediasmith, by which Mediasmith agreed to plan and place an advertising campaign for Pabagold's product, Hawaiian Gold Pabatan suntan lotion. The contract authorized Mediasmith to enter into contracts with third parties in order to effectuate the advertising program and to make timely payments to those third parties for goods and services for Pabagold's account. Pabagold was to be fully responsible to Mediasmith for all authorized expenditures. Pabagold agreed to pay Mediasmith's fee for services, including agreed-upon special services and out-of-pocket expenses. The contract contained a provision for the recovery of attorney's fees and costs incurred in enforcing the agreement, as well as a clause that any dispute arising under the contract would be settled by arbitration.

In April 1981, Mediasmith entered into an oral contract with Outdoor Services, by which Outdoor Services agreed to purchase outdoor advertising space for Pabagold's account in exchange for a 5 percent commission on the gross billings for the advertising placements. As required by the contract, Mediasmith provided Pabagold with a written media estimate for the outdoor advertising, which was signed and authorized by Pabagold's vice-president, Frank T. Fitzsimmons, Jr. Outdoor Services was not mentioned on the estimate.

Outdoor Services purchased from billboard advertisers $187,244.60 worth of posting and maintenance of outdoor advertising displays and earned

---

[1]In his decision, the arbitrator ruled in favor of Mediasmith and against Pabagold. He also ruled in favor of Outdoor Services and against both Pabagold and Mediasmith. The judgment, however, was only in favor of Outdoor Services and against both Pabagold and Mediasmith. Mediasmith is not a party to this appeal.

$8,545.42 in commissions. Upon Outdoor Services' demand upon Mediasmith for payment, Mediasmith requested payment from Pabagold. Pabagold failed to pay Mediasmith, which in turn did not pay Outdoor Services. Certain outdoor advertising companies began claiming independent liability on the part of Outdoor Services.

Mediasmith filed a complaint for breach of contract against Pabagold in San Francisco Superior Court in July 1981 and on three occasions unsuccessfully sought a writ of attachment against Pabagold. Thereafter, in November 1981, Gannett, one of the outdoor billboard companies with whom Outdoor Services had placed advertising pursuant to its contract with Mediasmith, filed a complaint against Outdoor Services.

On November 20, 1981, Outdoor Services filed a demand against Pabagold with the American Arbitration Association for arbitration as a third party beneficiary of the Pabagold-Mediasmith contract. Mediasmith, on December 14, 1981, filed a cross-demand with the American Arbitration Association for arbitration against Pabagold. On January 5, 1982, Outdoor Services filed an answer and a cross-complaint against Mediasmith and Pabagold in the Gannett action.

The American Arbitration Association granted jurisdiction over the arbitration between Mediasmith and Pabagold based on the arbitration clause contained in their contract, but required Outdoor Services to get either the consent of the parties to the arbitration or a court order as to the ability of Outdoor Services to participate in the arbitration. Pabagold refused its consent, but on March 22, 1982, Outdoor Services' petition to compel arbitration was granted by the San Francisco Superior Court.

On May 26, 1982, counsel for Pabagold failed to appear at a duly noticed prehearing conference at which the parties were to have set a hearing date for the arbitration. On the following day, Pabagold's counsel requested a continuance, and the arbitration was continued to September 1982. Pabagold's counsel again failed to appear at a duly noticed prearbitration conference on August 27, 1982.

On September 1, 1982, officers of Pabagold informed Outdoor Services that Pabagold would represent itself at the arbitration hearing. No mention was made that Pabagold was seeking new counsel. On September 6, Pabagold requested and obtained from all counsel a stipulation to continue the arbitration one day to September 8. However, on September 8, Pabagold appeared and requested a 60-day continuance in order to obtain counsel. The arbitrator denied the request, stating that Pabagold's conduct did not entitle it to a continuance.

On September 16, after the hearing had commenced, the arbitrator granted a continuance until October 25 because Stuart G. Sall, one of Pabagold's officers who was representing Pabagold at the arbitration, was experiencing health problems. The arbitrator rendered his decision in favor of Outdoor Services on November 11. On January 21, 1983, an order confirming arbitration award and a judgment were entered. This appeal followed.

## Discussion

### *Right to Enforce Arbitration as Third Party Beneficiary*

Pabagold contends that Outdoor Services is not a third party beneficiary to the Pabagold-Mediasmith contract because Pabagold was unaware of its identity at the time the agreement was created. At most, Pabagold argues, Outdoor Services was an incidental beneficiary and therefore unable to enforce the arbitration agreement.

Arbitration can only be ordered if there is a contract for arbitration. (Code Civ. Proc., §§ 1281, 1281.2.)

■ The prevailing American rule permits a third party beneficiary under a contract to enforce it. (1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 499, p. 428.) The rule is codified in Civil Code section 1559, which provides: "A contract, made expressly for the benefit of a third person, may be enforced by him [or her] at any time before the parties thereto rescind it." The promise in such a situation is treated as having been made directly to the third party. (*Shell* v. *Schmidt* (1954) 126 Cal.App.2d 279, 290 [272 P.2d 82].) It is not necessary that an express beneficiary be specifically identified in the contract; he or she may enforce it if he or she is a member of a class for whose benefit the contract was created. (*Garratt* v. *Baker* (1936) 5 Cal.2d 745, 748 [56 P.2d 225]; *Boliver* v. *Surety Co.* (1977) 72 Cal.App.3d Supp. 22, 27 [140 Cal.Rptr. 259].) However, section 1559 excludes enforcement of the contract by persons who are only incidentally or remotely benefited by it. (*Dateline Builders, Inc.* v. *City of Santa Rosa* (1983) 146 Cal.App.3d 520, 526 [194 Cal.Rptr. 258].)

■ In *Martinez* v. *Socoma Companies, Inc.* (1974) 11 Cal.3d 394, 400-401 [113 Cal.Rptr. 585, 521 P.2d 841], the Supreme Court addressed the issue of third party beneficiaries: "American law generally classifies persons having enforceable rights under contracts to which they are not parties as either creditor beneficiaries or donee beneficiaries. (Rest., Contracts, §§ 133, subds. (1), (2), 135, 136, 147; 2 Williston on Contracts (3d ed. 1959) § 356; 4 Corbin on Contracts (1951) § 774; see Rest.2d Contracts (Tentative Drafts 1973) § 133, coms. b, c.) California decisions follow this

classification. (*Southern Cal. Gas Co.* v. *ABC Construction Co.* (1962) 204 Cal.App.2d 747, 752 . . .; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 500.) [¶] A person cannot be a creditor beneficiary unless the promisor's performance of the contract will discharge some form of legal duty owed to the beneficiary by the promisee. (*Hartman Ranch Co.* v. *Associated Oil Co.* (1937) 10 Cal.2d 232, 244 . . .; Rest., Contracts, § 133, subd. (1)(b).) . . . [¶] A person is a donee beneficiary only if the promisee's contractual intent is either to make a gift to him [or her] or to confer on him [or her] a right against the promisor. (Rest., Contracts, § 133, subd. (1)(a).) If the promisee intends to make a gift, the donee beneficiary can recover if such donative intent must have been understood by the promisor from the nature of the contract and the circumstances accompanying its execution. (*Lucas* v. *Hamm* [1961] 56 Cal.2d [583] at pp. 590-591 [15 Cal.Rptr. 821, 364 P.2d 685].)"

██ The question of whether a third party is a creditor, donee, or incidental beneficiary is one of construction, and the intent must be evident from reading the contract as a whole under the light of the circumstances under which it was entered. (*Walters* v. *Calderon* (1972) 25 Cal.App.3d 863, 870 [102 Cal.Rptr. 89].) Thus, "[t]he test is whether an intent to benefit the third party appears from the terms of the contract [citation]." (*Ibid.*)

The Pabagold-Mediasmith contract, in its standard terms and conditions, provided, inter alia, the following: "STANDARD TERMS AND CONDITIONS [¶] 1) Mediasmith is authorized to enter into contracts with third parties, as appropriate and as authorized by a signed Media Estimate. Accordingly, Mediasmith may make contracts and arrangements with advertising media for space and/or time, and with others to effectuate the Client's advertising program and to obtain favorable terms and rates. . . . [¶] 3) Mediasmith shall make timely payment, for the account of the Client, to persons supplying goods and services, upon presentation and review of billings therefor. [¶] 4) The Client shall pay Mediasmith's fee for services, including any agreed-upon special services, and out-of-pocket expenses upon presentation of a billing therefor. [¶] 5) In the event the Client cancels services requested under a signed Media Estimate, the Client will pay all costs incurred to the date of cancellation and all unavoidable costs thereafter, together with Mediasmith's standard commission based on costs and expenses incurred or committed. The Client will also pay for any increased rates due to the loss of any volume discounts. [¶] 6) Mediasmith may, at its option, discontinue payments to third parties on the Client's behalf if the Client is in default in payment of any billing."

Outdoor Services asserts its right to enforce the arbitration agreement as a creditor beneficiary. As already stated, an entity can be a creditor bene-

ficiary only if the promisor's performance of the contract will discharge some form of legal duty owed to the beneficiary by the promisee. (See *Dateline Builders, Inc.* v. *City of Santa Rosa, supra,* 146 Cal.App.3d at p. 526.) We conclude that Outdoor Services was a creditor beneficiary of the contract between Pabagold and Mediasmith.

In *Gilbert Financial Corp.* v. *Steelform Contracting Co.* (1978) 82 Cal.App.3d 65 [145 Cal.Rptr. 448], the plaintiff contracted with a general contractor to construct a building. The general contractor contracted with Steelform to construct the roof and roof parking deck. (*Id.,* at p. 67.) After it was determined that Steelform had improperly completed the work, the plaintiff sought recovery directly from Steelform. (*Id.,* at pp. 67-68.) The trial court granted Steelform's motion to dismiss because there was no showing of required privity of contract. (*Id.,* at p. 68.) This court reversed, noting that it did not have to decide the privity issue because the plaintiff was a third party beneficiary of the contract between Steelform and the general contractor and could therefore sue for breach of the implied warranty of fitness. (*Id.,* at p. 69.) This court reasoned, "In the case at bar the general contractor, Appel, had the duty under its contract with Gilbert to furnish all the material and labor necessary to construct the building in question. Steelform subcontracted with Appel to furnish the materials and labor necessary for the construction of the roof. Clearly, Steelform (the promissor) realized it was assuming Appel's (the promisee) duties for this phase of the construction, and that Gilbert was the ultimate beneficiary of its performance as the owner of the building. Under the *Hartman* [*Hartman Ranch Co.* v. *Associated Oil Co.* (1937) 10 Cal.2d 232 (73 P.2d 1163)] and *Lucas* [*Lucas* v. *Hamm* (1961) 56 Cal.2d 583 (15 Cal.Rptr. 821, 364 P.2d 685)] rules, *supra,* Gilbert would obviously be a creditor beneficiary." (*Gilbert Financial Corp.* v. *Steelform Contracting Co., supra,* 82 Cal.App.3d at p. 70.)

 Here, Pabagold had a duty to pay Mediasmith for expenses incurred in its advertising campaign. Mediasmith contracted with Outdoor Services for outdoor advertising. Pabagold knew that Mediasmith would contract with third parties in order to effectuate the advertising campaign. Pabagold (the promisor) realized that it was assuming Mediasmith's (the promisee's) duty to pay for that portion of the campaign, and that Outdoor Services was the beneficiary of Pabagold's promise to pay.

In 1979, the American Law Institute adopted and promulgated the Restatement Second of the Law of Contracts. Because the institute considered the terms "creditor" beneficiary and "donee" beneficiary as carrying overtones of obsolete doctrinal difficulties, it substituted "intended" beneficiary for a party with rights under the contract and "incidental" beneficiary for

a party without rights under the contract. (Rest.2d Contracts, Introductory Note to ch. 14, pp. 438-439; see also *Gilbert Financial Corp.* v. *Steelform Contracting Co., supra,* 82 Cal.App.3d at p. 71; Note, *Martinez v. Socoma Companies: Problems in Determining Contract Beneficiaries' Rights* (1975) 27 Hastings L.J. 137, 143-144.) In place of former section 133, the Second Restatement inserted section 302: "(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either [¶] (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or [¶] (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. [¶] (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary."

Outdoor Services is an intended beneficiary within the meaning of section 302. Recognition of a right to performance in Outdoor Services is appropriate to effectuate the intention of the parties, i.e., to run an effective advertising campaign. In addition, the circumstances indicate that Mediasmith, the promisee, intended to give Outdoor Services the benefit of the promised performance, i.e., payment. Consequently, Outdoor Services may enforce the arbitration agreement in the contract between Pabagold and Mediasmith.

*Waiver of Right to Arbitration*

Pabagold argues that Outdoor Services is precluded from arbitrating the dispute because Mediasmith sought provisional remedies in the courts, and Outdoor Services filed a cross-complaint in the Gannett-Outdoor Services action. Pabagold maintains that by pursuing litigation, Outdoor Services has waived its right to arbitrate. We disagree.

■ "Arbitration is strongly favored. Courts will closely scrutinize any claims of waiver [citations], and '"indulge every intendment to give effect to such proceedings." [Citation.]' [Citation.] Moreover, the burden of proof is 'heavy' and rests on the party seeking to establish waiver [citations] which 'is not to be lightly inferred.' [Citations.]" (*Keating* v. *Superior Court* (1982) 31 Cal.3d 584, 604-605 [183 Cal.Rptr. 360, 645 P.2d 1192].)

Although there is no single test for establishing waiver, factors to consider include whether the party seeking arbitration has (1) previously taken steps inconsistent with an intent to invoke arbitration, (2) unreasonably delayed in seeking arbitration, or (3) acted in bad faith or with willful misconduct. (*Keating* v. *Superior Court, supra,* 31 Cal.3d at p. 605.)

The provisional remedy unsuccessfully sought by Mediasmith did not create a waiver of the arbitration agreement. Attachment is relief unavailable through arbitration, and, therefore, the seeking of it was not a repudiation of the arbitration agreement. (See *Schwartz* v. *Leibel* (1967) 249 Cal.App.2d 761, 763-764 [57 Cal.Rptr. 831], disapproved on other grounds in *Doers* v. *Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 188 [151 Cal.Rptr. 837, 588 P.2d 1261].)

Nor did Outdoor Services waive the right to arbitrate by filing a cross-complaint against Pabagold in the Gannett action. Such a protective measure cannot be viewed as inconsistent with the intent to invoke arbitration. It was Pabagold's failure to pay Mediasmith which eventually precipitated Gannett's action against Outdoor Services.[2]

### *Denial of Continuance*

Pabagold lastly contends that the judgment should be vacated because the arbitrator refused to continue the hearing so that Pabagold could seek new counsel. The contention lacks merit.

A party to an arbitration has the right to be represented by counsel at any arbitration proceeding. (Code Civ. Proc., § 1282.4.) The court shall vacate an arbitration award if the rights of a party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor. (Code Civ. Proc., § 1286.2, subd. (e).)

Pabagold argues that because its counsel announced his refusal to proceed on the eve of the arbitration proceeding, Pabagold should have been granted a continuance to secure new counsel.

Contrary to appellant's assertion, there is no due process right to be represented by counsel at arbitration. (*Horn* v. *Gurewitz* (1968) 261

---

[2]Code of Civil Procedure section 1281.4 provides, in pertinent part: "If a court of competent jurisdiction, whether in this State or not, has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before a court of this State, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies. . . . [¶] If the issue which is the controversy subject to arbitration is severable, the stay may be with respect to that issue only."

The record does not reveal whether Outdoor Services sought a stay of its cross-action against Pabagold pending the outcome of the arbitration proceedings. Pabagold on appeal, however, does not argue that any failure to comply with the above-cited statute constitutes a waiver of the right to arbitrate; Pabagold contends that pursuing the cross-action was inconsistent with seeking arbitration, and therefore Outdoor Services was foreclosed from resolving the dispute through arbitration. As already discussed *infra*, we disagree with Pabagold's position.

Cal.App.2d 255, 262 [67 Cal.Rptr. 791].) Additionally, Pabagold has failed to show sufficient cause for postponing the hearing. As early as January 26, 1982, Pabagold's counsel failed to appear at duly noticed depositions. Counsel also did not attend the prearbitration conference on May 26, 1982. However, on May 27, 1982, Pabagold's counsel requested a continuance of the arbitration scheduled for June 7, 1982. The arbitration was continued to September 7, 1982. Counsel again failed to appear at the August 27, 1982, prearbitration conference.

On September 1, 1982, Pabagold informed Outdoor Services that it would represent itself at the hearing. On September 6, 1982, Pabagold requested and obtained a stipulation by all parties to continue the arbitration for one day to September 8. On September 8, Pabagold appeared and requested a 60-day continuance to obtain new counsel. The arbitrator denied the request.

Any problems that Pabagold had with its counsel predate by several months the September arbitration. Pabagold had ample time to obtain other representation. Therefore, the arbitrator properly denied the request for a continuance.

Pabagold's lack of diligence distinguishes this case from *Vann* v. *Shilleh* (1975) 54 Cal.App.3d 192 [126 Cal.Rptr. 401]. In that case, the appellant's counsel withdrew on the eve of trial because his client rejected a negotiated settlement. (*Id.*, at p. 197.) This court held that the trial court abused its discretion in denying the appellant's motion for continuance to retain an attorney because counsel had improperly abandoned his client without advance warning. (*Id.*, at pp. 196-197.)

Here, Pabagold was well aware that its counsel had not been diligent. Pabagold had ample time to substitute counsel, but failed to do so. Under the circumstances, no continuance was justified.

CONCLUSION

The judgment is affirmed.

White, P. J., and Scott, J., concurred.