Filed 6/26/13 Pao v. Kleiner Perkins et al. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ELLEN PAO,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>KLEINER PERKINS CAUFIELD &<br>BYERS LLC,<br><br>　　　Defendant and Appellant. | A136090<br><br>(San Francisco City and County<br>Super. Ct. No. CGC-12-520719) |

Respondent Ellen Pao sued her employer, Kleiner Perkins Caufield & Byers LLC (KPCB), for gender discrimination, retaliation, and failure to prevent discrimination under the Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.).[1] KPCB moved to compel arbitration of the claims, relying on an arbitration clause included in written agreements Pao had executed with seven limited liability companies which manage KPCB's investment funds (the Managing LLCs). The trial court denied KPCB's motion, concluding that Pao could not be compelled to arbitrate her claims when KPCB was not a party to the agreements, and rejecting KPCB's claims that arbitration should be compelled on equitable estoppel and third party beneficiary theories. KPCB appeals and we affirm.

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

1

# I.   FACTUAL AND PROCEDURAL BACKGROUND

At the outset, we note that much of the record in this case has been filed under seal. The trial court granted KPCB's motions to seal a number of the exhibits relied on in support of KPCB's motion to compel arbitration. However, we note that KPCB, in its appellate briefs, which were not sealed, freely cites to and quotes from portions of these exhibits. This Court has not been requested to nor has it issued any separate order to seal. We have endeavored in this opinion to maintain the confidential information within the sealed exhibits, but we do discuss the material facts, as have the parties. (*CenterPoint Energy, Inc. v. Superior Court* (2007) 157 Cal.App.4th 1101, 1108-1109, fn. 3.)

KPCB is a venture capital firm. More specifically, KPCB forms special purpose investment vehicles (Funds) which then raise money from institutions and individuals for investment in emerging companies and developing business sectors such as digital technology, green technology, and biotechnology. While KPCB does not directly own or manage the Funds, KPCB partners and employees serve as members of one or more separately formed Managing LLCs that operate each of the Funds on behalf of investors. Managing LLCs typically share in a portion of the Funds' profits (carried interest) and are controlled by a subset of their members (Managing Members).

KPCB employees, known as investment partners, typically act as advisors to the Managing LLCs on matters related to Fund operations, but the Managing Members make final investment decisions.[2] Investment partners are compensated for their services in different ways, which may include a base salary and discretionary bonus from KPCB, as well as a portion of a Managing LLC's carried interest in a Fund.

In June 2005, Pao, who holds engineering, juris doctor, and masters of business administration degrees, accepted a written offer of employment from KPCB. In addition to stating the financial terms of the offer, the offer letter also stated that Pao's

---

[2] Investment partners may provide management, technology, and industry advice to one or more Managing LLCs and may also serve as directors of companies in which a Fund invests.

2

employment was " 'at-will.' " It did not contain an arbitration agreement. She began working for John Doerr, one of the managing partners of KPCB, as an associate partner.

Several years after beginning employment with KPCB, and after she began to complain of sexual harassment and retaliation, for each Managing LLC she was permitted to participate in, Pao expressly assumed rights by executing a "Member Interest Letter" or a "Grant and Amendment Agreement." The Member Interest Letters and Grant and Amendment Agreements made her a member or assignee of the Managing LLC and expressly acknowledged and incorporated the terms of each Managing LLC's Operating Agreement (Operating Agreements).[3]

Six of the seven Operating Agreements provide: "Any controversy or claim *arising out of or relating to this Agreement* . . . shall be settled by arbitration in . . . accordance with the rules of the American Arbitration Association . . . ." (Italics added.) The seventh provides: "Any controversy or claim shall be settled by binding arbitration . . . ." Several of the Operating Agreements and Member Interest Letters make clear that Pao was not an employee of the Managing LLC. For instance, one Member Interest Letter provides: "(f) <u>Non-Employee Status</u>. . . . [Y]ou acknowledge and agree that: (i) *you are not and have never been an employee of* [the Managing LLC or the Fund]; (ii) none of the obligations assumed or rights arising under the LLC Agreement create an employment relationship between you and [the Managing LLC or the Fund]; (iii) there exists no employment or similar agreement between you and [the Managing LLC or the Fund]; and (iv) you shall not be deemed an employee of [the Managing LLC or the Fund] for any purpose whatsoever (including any employee benefit program, tax obligation, or unemployment program). You specifically acknowledge and agree that your relationship with [the Managing LLC and the Fund] is not covered by, and accordingly you have no

---

[3] With respect to three of the Managing LLCs, the record does not contain a Member Interest Letter, Grant and Amendment Agreement, or Operating Agreement signed by Pao. However, Pao concedes that she is a party to all seven Operating Agreements.

3

rights under any federal, state or local employment or similar law (including any administrative policies or procedures arising thereunder)." (Italics added.)

Several of the Operating Agreements and the Member Interest Letters also state that payments from the Managing LLCs are not wages and that no other employment related obligations will be paid. However, the two most recent "Amended and Restated" Operating Agreements recognize that KPCB exists, in significant part, for the purpose of providing the Managing LLCs those services that are appropriately provided by individuals within an employment relationship. Several of the Operating Agreements also acknowledged that members were " 'at will' employee[s] of [KPCB]" and that "such . . . employment may be terminated by [KPCB] or such affiliate at any time for any or no reason, with or without cause, upon thirty (30) days' prior written notice." Under the Operating Agreements and Member Interest Letters, members also agree to trade name protection, nondisparagement, and confidentiality clauses specifically with respect to the business of KPCB.

With two exceptions, KPCB did not sign the Operating Agreements. In those two instances, KPCB signed "[f]or purposes of Section 12.9 and Article XIV only." Section 12.9 licenses use of KPCB's trademark. Article XIV provides, in part, that members receiving compensation for sitting on boards of directors must turn such compensation over to KPCB. Neither section 12.9 nor Article XIV includes the arbitration clause.

On May 10, 2012, Pao filed a lawsuit against KPCB, and 20 doe defendants. Pao alleges that, beginning in approximately 2007, after she ended an intimate relationship with a male partner and rejected the advances of another, KPCB retaliated against her in various ways in the work environment. Specifically, Pao alleges that, as a result of her gender and in retaliation for her complaints, she was denied promotions and attendant increases in salary and carried interest, and that she was denied board of director seats as well as opportunities to contribute to fund management.

In addition, Pao alleges that women were not advancing similarly to men at KPCB. Pao alleges that she, and other women, received less compensation, KPCB failed to promote her and other women to senior partner, and that male partners were promoted

4

to senior partner despite inappropriate behavior. With respect to carried interest, Pao asserts: "As is typical in venture capital firms, KPCB retains a share of the profits of each investment fund that it manages. This share of the profits is commonly referred to as 'carried interest.' *The KPCB carried interest is shared among the KPCB professionals based on allocation decisions made by KPCB Managing Partners.* The larger the share of carried interest that a professional receives of each KPCB investment fund, the more money that professional stands to make if that fund generates profits. KPCB Managing Partners discriminated against women over time by allocating smaller carried interest percentages from its various investment funds to women than to men. *The discrimination had two forms: Women were not promoted to higher levels within* [*KPCB*] *that would have resulted in high allocations, and men at comparable levels to women were allocated larger shares of carried interest.*" (Italics added.)

Accordingly, the suit asserts causes of action under FEHA for gender discrimination (§ 12940, subd. (a)), retaliation (§ 12940, subd. (h)), and failure to prevent discrimination (§ 12940, subd. (k)). Pao's complaint seeks economic damages for failure to promote, including lost salary, lost bonuses, and lost carried interest.

KPCB filed a motion to compel arbitration, arguing that a valid agreement to arbitrate had been signed by it and Pao. The trial court denied KPCB's motion without prejudice. However, because KPCB had raised estoppel and third party beneficiary arguments in its reply brief, the trial court allowed additional briefing. At a second hearing, the trial court concluded: "[A]s to the arbitration clause, particularly arbitrating employment disputes, there is nothing in those agreements that evidence an intent to bestow third party beneficiary rights on the employer here." The court's order, denying the motion to compel, stated: "The Court finds that there is no arbitration agreement between [Pao] and [KPCB]. The Court also rejects [KPCB's] arguments about equitable estoppel and third party beneficiary." KPCB filed a timely notice of appeal.[4]

---

[4] An order denying a petition to compel arbitration is an appealable order. (Code Civ. Proc., § 1294, subd. (a).)

5

## II.    DISCUSSION

Pao does not dispute that she is a signatory to agreements with seven Managing LLCs incorporating mandatory arbitration clauses.  (See *Boys Club of San Fernando Valley, Inc. v. Fidelity & Deposit Co.* (1992) 6 Cal.App.4th 1266, 1271 ["agreement need not expressly provide for arbitration, but may do so in a secondary document which is incorporated by reference"].)  The question, on appeal, is whether KPCB, which is (with two limited exceptions) not a party to the Operating Agreements, can compel Pao to arbitrate her FEHA claims.[5]  KPCB contends that Pao is bound to arbitrate her claims because:  (1) Pao is equitably estopped to avoid arbitration; and (2) KPCB is a third party beneficiary of the Operating Agreements.

Code of Civil Procedure section 1281.2 provides:  "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that" the case falls into one of three limited exceptions.  "[A] petition to compel arbitration is heard in the same manner as any other motion.  Factual issues are resolved by the trial court based on conflicting affidavits or declarations and, at the court's discretion, even oral testimony. [Citation.]"  (*City of Hope v. Bryan Cave, L.L.P.* (2002) 102 Cal.App.4th 1356, 1369.)

---

[5] To the extent KPCB continues to assert, in passing, that it is entitled to enforce the arbitration provision because it is a party to at least some of the Operating Agreements, it has forfeited the argument by failing to include reasoned analysis and a separate heading in its opening brief.  (See *People v. Stanley* (1995) 10 Cal.4th 764, 793 [if no legal argument with citation to authority " 'is furnished on a particular point, the court may treat it as waived, and pass it without consideration' "]; *300 DeHaro Street Investors v. Department of Housing & Community Development* (2008) 161 Cal.App.4th 1240, 1257 [argument not set forth under separate heading may be disregarded].)  The argument is not persuasive, in any event.  The two operating agreements that KPCB signed include a statement that KPCB signed for limited purposes—"For purposes of Section 12.9 and Article XIV only."  And, all of the Operating Agreements state that the agreement is entered into by and among its members and assignees.  KPCB is neither a member nor assignee under the Operating Agreements.

6

"An 'order denying a petition to compel arbitration, like any other judgment or order of a lower court, is presumed to be correct, and all intendments and presumptions are indulged to support the order on matters as to which the record is silent.' [Citation.] Nonetheless, where . . . the trial court determined questions of law, to wit: whether [the defendant] was a party to the arbitration agreement and whether the arbitration covered [the plaintiff's] statutory claims, we review the trial court's determinations de novo. [Citation.]" (*Smith v. Microskills San Diego L.P.* (2007) 153 Cal.App.4th 892, 896 (*Smith*).) Where there are disputed facts, the trial court's resolution of such disputed facts will be upheld if supported by substantial evidence. But if there is no disputed extrinsic evidence, the trial court's decision on the arbitrability determination is reviewed de novo. (*Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1511–1512.)

Because Pao's allegations and the language of the Operating Agreements are undisputed, we independently review the trial court's determination that KPCB was not entitled to enforce the Operating Agreements' arbitration clause.

A.     *Equitable Estoppel*

KPCB argues that equitable estoppel prevents Pao from avoiding arbitration on her claims. Both the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) and the California Arbitration Act (Code Civ. Proc., § 1280 et seq.)[6] favor enforcement of valid arbitration agreements. (*Moses H. Cone Hosp. v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 24–25 ["[FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"]; *Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 25–26 [strong public policy in favor of arbitration]; *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 96–97.)

---

[6] Code of Civil Procedure, section 1281 provides: "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract."

However, " 'arbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed to submit.' [Citation.]" (*AT&T Technologies v. Communications Workers* (1986) 475 U.S. 643, 648.) "As a general matter, only signatories to an arbitration agreement may enforce it. [Citation.]" (*Rowe v. Exline* (2007) 153 Cal.App.4th 1276, 1284 (*Rowe*).) Nonparties to an arbitration agreement are not barred from enforcing it, however. " '[T]raditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel' [citation] . . . ." (*Arthur Andersen LLP v. Carlisle* (2009) 556 U.S. 624, 631; accord, *Bouton v. USAA Casualty Ins.* (2008) 167 Cal.App.4th 412, 424.) "Whether or not an arbitration agreement is operative against a person who has not signed it involves a question of 'substantive arbitrability' which is to be determined by the court. [Citation.]" (*Boys Club of San Fernando Valley, Inc. v. Fidelity & Deposit Co., supra,* 6 Cal.App.4th at p. 1271.)

"One pertinent exception is based on the doctrine of equitable estoppel. [Citations.] Under that doctrine, as applied in 'both federal and California decisional authority, a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are "intimately founded in and intertwined" with the underlying contract obligations.' [Citations.] 'By relying on contract terms in a claim against a nonsignatory defendant, even if not exclusively, a plaintiff may be equitably estopped from repudiating the arbitration clause contained in that agreement.' [Citations.] 'The rule applies to prevent parties from trifling with their contractual obligations.' [Citation.]" (*JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1237, fn. omitted.)

"[T]he sine qua non for application of equitable estoppel as the basis for allowing a nonsignatory to enforce an arbitration clause is that the claims plaintiff asserts against the nonsignatory must be dependent upon, or founded in and inextricably intertwined with, the underlying contractual obligations of the agreement containing the arbitration clause. . . . [¶] . . . [¶] . . . [M]erely 'mak[ing] reference to' an agreement with an

8

arbitration clause is not enough. . . . [¶] . . . In *any* case applying equitable estoppel to compel arbitration despite the lack of an agreement to arbitrate, a nonsignatory may compel arbitration only when the claims against the nonsignatory are founded in and inextricably bound up with *the obligations imposed by the agreement containing the arbitration clause*." (*Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 217–219 (*Goldman*).)

" 'This requirement comports with, and indeed derives from, the very purposes of the doctrine:  to prevent a party from using the terms or obligations of an agreement as the basis for his claims against a nonsignatory, while at the same time refusing to arbitrate with the nonsignatory under another clause of that same agreement.'  [Citation.] Application of the doctrine in a proper case is not unfair to signatory plaintiffs resisting arbitration:  Not only have such plaintiffs 'decided the theories on which to sue' the nonsignatory, they also have 'consented to arbitrate the claims against [the signatory defendant] anyway.' (*Rowe, supra*, 153 Cal.App.4th at p. 1290.)" (*JSM Tuscany, LLC v. Superior Court, supra,* 193 Cal.App.4th at p. 1238.)  "The doctrine thus prevents a party from playing fast and loose with its commitment to arbitrate, honoring it when advantageous and circumventing it to gain undue advantage.  [Citation.]" (*Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705, 1714.)  "Because equitable estoppel applies only if [the] plaintiffs' claims against the nonsignatory are dependent upon, or inextricably bound up with, the obligations imposed by the contract plaintiff has signed with the signatory defendant, we examine the facts alleged in the complaints." (*Goldman, supra,* 173 Cal.App.4th at pp. 229–230.)

KPCB relies on several cases applying the doctrine.  We begin with this Division's decision, in *Rowe, supra,* 153 Cal.App.4th at p. 1280, wherein the plaintiff and a corporate defendant entered into a settlement agreement that contained an arbitration clause.  The plaintiff sued the corporate defendant and two of its officers for breach of contract and alleged violations of the Corporations Code, after the defendant failed to make a payment due under the agreement.  (*Id.* at pp. 1279–1281.)  The trial court denied the defendants' motion to compel arbitration, concluding that the plaintiff could not be

9

forced to arbitrate his claims against the individual defendants, who were not parties to the settlement agreement. (*Id.* at pp. 1281–1282.)

We reversed and held that the plaintiff was compelled to arbitrate his cause of action for breach of contract against the individual defendants because they had specifically been sued, in the breach of contract cause of action, as the corporate defendant's alter egos. (*Rowe, supra,* 153 Cal.App.4th at pp. 1280–1281, 1285.) We also noted that, as a matter of California law, "a signatory to an arbitration clause may be compelled to arbitrate against a nonsignatory when the relevant causes of action rely on and presume the existence of the contract containing the arbitration provision. [Citation.] In other words, a plaintiff who relies on the contractual terms in a claim against a nonsignatory may be precluded from repudiating the arbitration clause in the contract. [Citation.]" (*Id.* at pp. 1286–1287.) We made clear that application of "the estoppel doctrine in this context does not require a conscious or subjective intent to avoid arbitration, but turns upon the nexus between the contract and the causes of action asserted." (*Id.* at p. 1289.) The plaintiff was estopped to avoid arbitration of his statutory causes of action because they were alleged to be " 'pursuant to the [settlement agreement]' " and because they all sought recovery of the $175,000 owed thereunder. (*Id.* at p. 1287.)

In *Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262, the plaintiff sued Financial Title Company (Financial) and Alliance Title Company, Inc. (Alliance), who had acquired Financial, alleging, among other causes of action, breach of his employment agreement. Both Financial and Alliance petitioned to compel arbitration, relying on an arbitration clause in the employment agreement between the plaintiff and Financial. The trial court denied Alliance's petition, on the ground that it was not a signatory to the employment agreement. (*Id.* at pp. 265–266.) The Second District Court of Appeal reversed, concluding that, under federal law, the plaintiff was estopped from avoiding arbitration with the nonsignatory because his claims against Alliance relied on, made reference to, and presumed the existence of the employment agreement. (*Id.* at pp. 267–268, 272–273.) The court stressed: "The focus is on the nature of the claims

10

asserted by the plaintiff against the nonsignatory defendant. [Citations.]" (*Id.* at p. 272.) The plaintiff was estopped because he alleged Alliance "failed to pay him accrued wages, including incentive compensation, *due under* the terms of the June 5, 2003, employment agreement and the Labor Code[,] . . . breached the June 5, 2003, employment contract causing plaintiff damages in the form of lost earnings and other employment benefits *due under* that agreement[,] . . . and breached the covenant of good faith and fair dealing *implied in* the June 5, 2003, employment agreement . . . ." (*Id.* at p. 272, italics added.)

In *Choctaw Generation Ltd. v. American Home Assur.* (2d Cir. 2001) 271 F.3d 403, the Second Circuit Court of Appeals permitted a surety to invoke the arbitration clause of a construction contract to which it was not a party. Choctaw and Bechtel had entered into a construction contract containing an arbitration clause. Bechtel obtained a surety bond from American Home. The surety contract contained no arbitration clause, but did refer to and incorporate the construction contract. There was an ongoing arbitration between the parties to the construction contract (Choctaw and Bechtel), when Choctaw sued American Home seeking replenishment of a letter of credit on the ground that replenishment was required by the construction contract. (*Id.* at pp. 404–405, 407.) The court observed: "The controversy between Choctaw and American Home under the Bond could hardly be more closely bound to the dispute now in arbitration between Choctaw and Bechtel under the Construction Contract. The surety contract incorporates by reference the underlying Construction Contract. And the present dispute concerns the duty to replenish a letter of credit maintained under the Construction Contract, and requires a ruling as to whether that duty is independent of certain others in the context of the Construction Contract as a whole." (*Id.* at p. 406.) Thus, the court concluded that equitable estoppel applied because the plaintiff's suit against the surety was "linked textually to the Construction Contract, and its merits [were] bound up with the dispute . . . being arbitrated between Choctaw and Bechtel." (*Id.* at pp. 404, 407.)

The above cases, as well as other equitable estoppel cases relied on by KPCB, establish that a plaintiff will be equitably estopped to arbitrate when suing nonsignatories for claims based on contractual obligations of the underlying contract containing an

11

arbitration clause. (See also *JSM Tuscany, LLC v. Superior Court, supra,* 193 Cal.App.4th at p. 1242; *Turtle Ridge Media Group, Inc. v. Pacific Bell Directory* (2006) 140 Cal.App.4th 828, 833–834; *Metalclad Corp. v. Ventana Environmental Organizational Partnership, supra*, 109 Cal.App.4th at p. 1717; *Grigson v. Creative Artists Agency* (5th Cir. 2000) 210 F.3d 524, 530–531;[7] *MS Dealer Service Corp. v. Franklin* (11th Cir. 1999) 177 F.3d 942, 945, 949, abrogated on other grounds by *Arthur Andersen LLP v. Carlisle, supra,* 556 U.S. at p. 631.) This line of authority is distinguishable because Pao's claims do not rely on, presume the existence of, nor are they intertwined with any contractual obligations in the Operating Agreements.

KPCB asserts that Pao should be equitably estopped to avoid arbitration because "Pao pleads that she was discriminated against and retaliated against because she was not given benefits that she was otherwise [only] entitled to under the Operating Agreements." If this was an accurate characterization of Pao's claims, we might have a closer case. However, we are required to independently analyze the causes of action alleged in the complaint, rather than simply accepting KPCB's characterization of Pao's claims. (*Goldman, supra,* 173 Cal.App.4th at pp. 229–230.)

The complaint reveals that Pao has three different claims: (1) a cause of action for gender discrimination, in violation of section 12940, subdivision (a); (2) a cause of action for retaliation, in violation of section 12940, subdivision (h); and (3) a cause of action for failure to prevent gender discrimination, in violation of section 12940, subdivision (k). From a legal standpoint, it is readily apparent that all three of these claims are dependent upon statutory obligations imposed by virtue of the employment relationship between Pao and KPCB. KPCB's obligation not to illegally discriminate, retaliate, or fail to

---

[7] The *Grigson* court did not hold that reference to a contract containing an arbitration clause for the sole purpose of calculating damages was sufficient, on its own, to justify equitable estoppel. After discussing "a few examples" of the extensive intertwining of the plaintiff's claims with the distribution agreement containing an arbitration clause, it merely went on to say: "How possible damages might be computed, in the light of the detailed 'accounting' provisions of the agreement, is but another example." (*Grigson v. Creative Artists Agency, supra,* 210 F.3d at p. 530.)

prevent discrimination is not imposed by the Operating Agreements, it is rooted in the employment relationship.

It is not the form of the cause of action, but the nature of the claim, that is determinative. (See *Metalclad Corp. v. Ventana Environmental Organizational Partnership, supra,* 109 Cal.App.4th at pp. 1717–1718; *Sunkist Soft Drinks v. Sunkist Growers* (11th Cir. 1993) 10 F.3d 753, 758, abrogated on other grounds by *Arthur Anderson LLP v. Carlisle*, *supra*, 556 U.S. at p. 631.) Accordingly, we turn to the factual allegations underlying Pao's FEHA causes of action.[8] Pao asserts: "The denial of promotion, the denial of wages *and carried interest in KPCB's investment funds . . .* , the differences in the number of investments . . . women as compared to men are allowed to make, the exclusion of . . . women from business events, meetings and opportunities, and the exclusion of . . . women from important managerial functions at KPCB constitutes [discrimination, retaliation, and failure to take all reasonable steps to prevent discrimination.]" (Italics added.) And, most notably, Pao alleges: "As is typical in venture capital firms, KPCB retains a share of the profits of each investment fund that it manages. This share of the profits is commonly referred to as 'carried interest.' *The KPCB carried interest is shared among the KPCB professionals based on allocation decisions made by KPCB Managing Partners.* The larger the share of carried interest that a professional receives of each KPCB investment fund, the more money that professional stands to make if that fund generates profits. KPCB Managing Partners discriminated against women over time by allocating smaller carried interest percentages from its various investment funds to women than to men. *The discrimination had two forms: Women were not promoted to higher levels within* [*KPCB*] *that would have resulted in high allocations, and men at comparable levels to women were allocated larger shares of carried interest*." (Italics added.)

---

[8] We do not consider Pao's termination of employment with KPCB because her complaint has not been amended to include any such allegations.

13

Pao's complaint does refer to carried interest, which is provided for in the Operating Agreements. But, as the above makes clear, Pao does not claim that KPCB is liable for any carried interest due, but not paid, under the terms of any of the Operating Agreements. Pao is not attempting to hold KPCB or the Managing LLCs to the terms of the Operating Agreements. The substance of Pao's claims does not rely on the Operating Agreements. Pao's allegations do not even mention the Operating Agreements. Rather, Pao alleges that it was the actions of KPCB's managing partners, in failing to promote her and allocating smaller shares of carried interest to women, that resulted in the loss of carried interest compensation that she would otherwise have been able to earn.

KPCB argues that Pao must be estopped from avoiding arbitration because KPCB has no authority to increase the amount of carried interest received by Pao. Specifically, KPCB contends that the Operating Agreements will have to be referred to in determining whether KPCB legally caused any failure to award carried interest. KPCB asserts that the Operating Agreements gave the Managing LLCs exclusive authority to grant, increase, dilute, reduce, or forfeit a member's carried interest in a Fund. This contention appears to be at odds with the express terms of Pao's employment agreement with KPCB, which explicitly allocates to Pao a "cash equivalent share of the net income" of one of the Managing LLCs, which "enjoys a carried interest in one of the Funds."

The trial court addressed the same argument: "The complaint does refer repeatedly to carried interest, and carried interest only makes sense in the context of the funds. So there is some connection. But is that connection the type of connection that warrants arbitration? I think not. . . . [¶] . . . [¶] My thinking is that [Pao] says that [KPCB] engaged in discriminatory and retaliatory behavior, in violation of California's employment laws. And as a result of that, she was not given the carried interest that she would otherwise have received. [¶] . . . [¶] [KPCB's] position is [it] couldn't have done that because it wasn't [KPCB's] right or within [KPCB's] power to provide the carried interest. It is the . . . managers of the LLC for the funds that makes those decisions. [¶] So effectively what you're doing is, you're saying that the allegations of the complaint, insofar as they relate to the carried interest, are false and untrue in at least one

14

important respect. [¶] Even assuming that there was any discrimination or retaliation by [KPCB], there couldn't have been discrimination or retaliation by [KPCB] as to the carried interest because any such actions as to the carried interest would have had to have been done by a third party. But that third party is not sued. So that would be—if you're right, that would be a complete defense at least as to the carried-interest allegations." We agree with the trial court that, at this juncture, we need not and cannot decide the merits of this dispute. The Operating Agreements may very well be referenced in determining the validity of KPCB's *defense* to the carried interest allegations. But, in determining whether equitable estoppel applies, we are concerned with the facts alleged in the complaint. (*Goldman, supra,* 173 Cal.App.4th at pp. 229–230.)

Nor do we see any evidence that, as KPCB asserts, "Pao has intentionally sued a nonsignatory party *specifically for the purpose* of avoiding arbitration." Pao did not name any Managing LLC or member as a defendant. And, KPCB points out that each Managing LLC has a different composition of Managing Members that control such Managing LLC, which in turn is different than the composition of the individuals that control KPCB. In fact, KPCB also concedes that Pao could not sue the Managing LLCs or their Managing Members for employment discrimination and retaliation because several of the Operating Agreements and Member Interest Letters specifically disclaim an employment relationship between Pao and the Managing LLCs. Thus, we must dismiss, as hollow, KPCB's claim that Pao has inequitably sued the "wrong party" in her employment suit.

KPCB also suggests that, even if the fact finder were to conclude that Pao's carried interest would have been higher but for discrimination by KPCB, "it would still have to look to the Operating Agreements to determine whether the investments in that Fund were 'in the carry' (generating distributions) under the terms of the Agreements." It may be the case that resolution of Pao's claim for damages based on lost carried interest may require peripheral reference to the Operating Agreements, but it is simply not the case that Pao's employment discrimination and retaliation claims would not lie absent the Operating Agreements. "[M]erely 'mak[ing] reference to' an agreement with

15

an arbitration clause is not enough" to require arbitration. (*Goldman, supra,* 173 Cal.App.4th at p. 218.)

The facts here are quite similar to those presented in *Goldman, supra,* 173 Cal.App.4th 209. In *Goldman*, investors sued their accountants, attorneys, and investment advisors for, among other things, breach of fiduciary duty and fraud related to a fraudulent tax avoidance scheme. (*Id.* at pp. 213, 215.) In part, the advisors had assisted the investors in forming limited liability companies with standard operating agreements containing broad arbitration provisions. The accountants and attorneys, who were not parties to the operating agreements, sought to compel arbitration. They asserted the plaintiff investors were estopped from avoiding arbitration. (*Id*. at pp. 213, 216.) The reviewing court affirmed the trial court's denial of the motion to compel arbitration, finding that the claims were "unrelated to any of the obligations in the operating agreements, which were merely a procedural and collateral step in the creation of the fraudulent tax shelters." (*Id.* at p. 218.) The court observed that the plaintiffs did not "rely on or use any terms or obligations of the operating agreements as a foundation for their claims" and did not even mention the agreements. Thus, there was no equitable basis to compel arbitration. (*Ibid.*)

Here, too, the terms of the Operating Agreements are collateral to Pao's complaint. Pao is not seeking to enforce the terms or obligations of the Operating Agreements, while at the same time seeking to avoid arbitration. Thus, this case does not present the unfairness that equitable estoppel is designed to avoid. The trial court did not err in concluding equitable estoppel inapplicable.

B.      *Third Party Beneficiary*

KPCB also argues that it can enforce the arbitration provision as a third party beneficiary of the Operating Agreements.

"[A] person who can show he is a third party beneficiary of an arbitration agreement may be entitled to enforce that agreement. [Citation.]" (*Valley Casework, Inc. v. Comfort Construction, Inc.* (1999) 76 Cal.App.4th 1013, 1021; accord, *Harris v. Superior Court* (1986) 188 Cal.App.3d 475, 478; *Outdoor Services, Inc. v. Pabagold, Inc.*

16

(1986) 185 Cal.App.3d 676, 681 (*Outdoor Services*).) Civil Code section 1559 also provides: "A contract, made *expressly* for the benefit of a third person, may be enforced by him . . . ." (Italics added.) "The term 'expressly' in Civil Code section 1559, however, means ' "in an express manner; in direct or unmistakable terms; explicitly; definitely; directly." ' [Citations.]" (*Smith, supra,* 153 Cal.App.4th at p. 898.)

" 'The party claiming to be a third party beneficiary bears the burden of proving that the contracting parties actually promised the performance which the third party beneficiary seeks. This remains largely a question of interpreting the written contract. [Citation.]' [Citation.]" (*Loduca v. Polyzos* (2007) 153 Cal.App.4th 334, 341.) The intent of the parties must be assessed "from reading the contract as a whole in light of the circumstances under which it was entered." (*Cione v. Foresters Equity Services, Inc.* (1997) 58 Cal.App.4th 625, 636.) Under the Second Restatement of Contracts, a third party is an intended beneficiary "if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties *and* either [¶] (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or [¶] (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." (Rest.2d Contracts, § 302, pp. 439–440, italics added; *Outdoor Services, supra,* 185 Cal.App.3d at p. 684.)

KPCB argues that it is an intended beneficiary of the Operating Agreements because: (1) members agreed, in some of the Operating Agreements, that their employment with KPCB was at will; (2) the Operating Agreements also provided that compensation for board service would be paid to KPCB; (3) members also agreed to trade name protection, nondisparagement, and confidentiality clauses specifically with respect to the business of KPCB.

The trial court rejected KPCB's third party beneficiary theory, on the following grounds: "[KPCB], in my view, cannot be seen as a third party beneficiary *of the arbitration clause* in the . . . [Operating Agreements]. [¶] . . . [¶] They're a third party beneficiary [as to certain fee disbursements]. As to disparagement rights, they probably are. . . . [¶] But as to the arbitration clause, *particularly arbitrating employment disputes*,

17

there is nothing in those agreements that evidence an intent to bestow third party beneficiary rights on the employer here." (Italics added.)

KPCB argues that the trial court erred because, in determining third party beneficiary status, a court need only conclude that the third party receives a benefit from the contract as a whole and not that the arbitration clause itself specifically includes the third party as a beneficiary. KPCB reiterates: "The law is clear that where an agreement is entered into for the benefit of a third party, the third party has the right to enforce *any* term that confers a procedural or substantive benefit—including fee shifting provisions, forum selection clauses and arbitration agreements." KPCB relies on *Outdoor Services* to support this proposition.

In *Outdoor Services,* Pabagold entered into a written contract with Mediasmith, by which Mediasmith agreed to plan and place an advertising campaign for Pabagold's suntan lotion. The contract authorized Mediasmith to enter into contracts with third parties in order to effectuate the advertising program and to make timely payments to those third parties for goods and services for Pabagold's account. Accordingly, Mediasmith contracted with Outdoor Services, whereby Outdoor Services agreed to purchase outdoor advertising space for Pabagold's account in exchange for a 5 percent commission. (*Outdoor Services, supra,* 185 Cal.App.3d at p. 679.) When Outdoor Services was not paid its commission, it filed a demand for arbitration and a petition to compel arbitration. The arbitrator rendered a decision in favor of Outdoor Services. (*Id.* at pp. 680–681.) Pabagold appealed, contending that Outdoor Services was unable to enforce the arbitration agreement because it was not a third party beneficiary of the Pabagold-Mediasmith contract containing the arbitration clause. (*Id.* at pp. 679, 681.) Division Three of this court disagreed because "Outdoor Services was a creditor beneficiary of the contract between Pabagold and Mediasmith." (*Id.* at p. 683.) The court further explained: "Here, Pabagold had a duty to pay Mediasmith for expenses incurred in its advertising campaign. Mediasmith contracted with Outdoor Services for outdoor advertising. Pabagold knew that Mediasmith would contract with third parties in order to effectuate the advertising campaign. Pabagold (the promisor) realized that it was

18

assuming Mediasmith's (the promisee's) duty to pay for that portion of the campaign, and that Outdoor Services was the beneficiary of Pabagold's promise to pay." (*Id.* at p. 683.)

KPCB contends: "If the Superior Court's reasoning below were correct, the nonsignatory subcontractor in [*Outdoor Services, supra,* 185 Cal.App.3d 676] would not be permitted to enforce the arbitration clause because, while it was implicitly a third party beneficiary of the agreement to pay, it was not expressly a beneficiary of the agreement to arbitrate. This result makes no sense. The ability to enforce third party rights in an agreement includes the ability to enforce *those rights* in the agreed forum." (Italics omitted & added.) But, KPCB overlooks key distinctions between this case and *Outdoor Services*. First, and most importantly, the *Outdoor Services* court did not address the distinction raised by the trial court and Pao. Cases are not authority for propositions not considered. (*People v. Avila* (2006) 38 Cal.4th 491, 566.) And, there are other cases in which the reviewing courts closely scrutinized the language of the arbitration clause itself to determine whether the clause, rather than other provisions of the contract, clearly includes the third party as a beneficiary. (See *Ronay Family Limited Partnership v. Tweed* (May 23, 2013, D062195) __ Cal.App.4th __ [2013 Cal.App.Lexis 408] ["[t]o invoke the third party beneficiary exception, [third party defendants] had to show that the arbitration clause of the account agreement was 'made expressly for [their] benefit' "]; *Smith, supra,* 153 Cal.App.4th at pp. 898–899; *Arista Films, Inc. v. Gilford Securities, Inc.* (1996) 43 Cal.App.4th 495, 500–502; *Macaulay v. Norlander* (1992) 12 Cal.App.4th 1, 8.)

And, KPCB appears to overlook the true concern of the trial court—that it was not the intent of the parties to arbitrate employment disputes. We agree with the trial court that, even if KPCB could be considered a third party beneficiary of the Operating Agreements, it cannot compel arbitration of Pao's employment claims. "For a nonsignatory to invoke an arbitration provision in an agreement based on a third party beneficiary theory, *the nonsignatory beneficiary first must establish the agreement was applicable to the controversy*. [Citation.]" (*Jones v. Jacobson* (2011) 195 Cal.App.4th 1, 22, italics added; accord, *Epitech, Inc. v. Kann* (2012) 204 Cal.App.4th 1365, 1373.) The

19

facts presented in *Outdoor Services* satisfied this rule. The third party in that case was seeking to enforce its right to be paid for performance under the contract containing the arbitration provision. (*Outdoor Services, supra*, 185 Cal.App.3d at pp. 680, 684.)

And, a case relied on by Pao explicitly demonstrates the rule. In *Smith, supra,* 153 Cal.App.4th 892, a student (Smith) executed a loan agreement with Sallie Mae, which contained an arbitration provision. Specifically, the student and Sallie Mae agreed to arbitrate " 'any claim, dispute or controversy . . . arising from or relating to this Note or [the student's] application for a loan or advertisements, promotions or oral or written statements related to this Note or the program under which such a loan is or would be made, the relationships which result from this Note (including to the full extent permitted by law, relationships with third parties who are not signatories of this Note) or the validity, enforceability or scope of this Arbitration Provision or the entire Note (collectively, "Claim").' " (*Id.* at pp. 894–895.) Smith used the funds obtained from the loan to pay tuition at a school (Microskills), which he later sued for misrepresentations made in order to induce enrollment. Microskills moved to compel arbitration, arguing that it was a third party beneficiary of the note and its arbitration provision. (*Id.* at p. 895.)

On appeal, the Fourth District Court of Appeal affirmed the trial court's order denying the motion to compel, despite Microskills's particular identification in the note as the " 'school.' " (*Smith, supra,* 153 Cal.App.4th at pp. 895, 899, 901.) The court reasoned: "Although it is true Microskills provided the Sallie Mae forms Smith and the other students signed and received from Sallie Mae the proceeds of the students' loans, *Smith's complaint is not in any fashion based upon this activity or on the students' obligation to Sallie Mae.* Nothing in Smith's complaint exposes Sallie Mae to liability, challenges Sallie Mae's rights under the notes, or is based upon Microskills's loan processing activity. Rather, as Smith points out, his complaint is based on alleged common law and statutory obligations which are solely Microskills's obligations as an educational institution and foreign to Sallie Mae's role as a lender. Microskills has no more equitable right to the benefit of Sallie Mae's arbitration clause in resolving Smith's

20

claims than it would have to benefit from an arbitration clause which appeared in a student's agreement with a credit card provider if, instead of Sallie Mae, the student used a credit card to finance his or her training. In short, because the means by which a student decided to finance his or her education is unrelated to Microskills's obligations to its students under the UCL and the Education Code, equity does not provide Microskills with the benefit of the financing mechanism chosen by the student. [¶] Largely for the same reasons, Microskills cannot establish that it is a third party beneficiary of the Sallie Mae notes." (*Smith, supra,* 153 Cal.App.4th at pp. 897–898, italics added.)

As discussed in further detail in part II.A., Pao's claims for employment discrimination, retaliation and failure to prevent discrimination bear little connection to the Operating Agreements containing the arbitration provisions. Pao's claims do not bear " 'a significant relationship' " to the Operating Agreements or have " 'their origin or genesis' " in the Operating Agreements, as KPCB suggests. (*Simula, Inc. v. Autoliv, Inc.* (9th Cir. 1999) 175 F.3d 716, 721 [construing the scope of similar arbitration clause language].)[9] Rather, Pao's claims have their origin or genesis in the offer letter, which does not contain an arbitration clause. Because Pao's claims do not bear a significant relationship to the Operating Agreements, the trial court did not err in concluding that KPCB could not compel arbitration as a third party beneficiary. Pao is not bound to arbitrate her complaint against KPCB. We need not address Pao's argument that the arbitration clauses are unconscionable.

----

[9] KPCB misplaces its reliance on the Sixth Circuit Court of Appeal's unpublished opinion, in *Panepucci v. Honigman Miller Schwartz & Cohn LLP* (6th Cir. 2008) 281 Fed.Appx. 482. The Sixth Circuit's determination of the scope of an even more broadly worded arbitration agreement entered into directly between an employee and employer is irrelevant to our analysis. Furthermore, in that case, the employee complained that she was entitled to more compensation than she had been paid. That claim clearly required reference to, and interpretation of, the Partnership Agreement at issue, which explained how a partner's "draw" was to be calculated. (*Id.* at p. 487.) In contrast, Pao does not assert that she received less carried interest than she was entitled to under the Operating Agreements.

## III.    DISPOSITION

The order is affirmed.  Pao is to recover her costs on appeal.


_____
                                                                        Bruiniers, J.


We concur:


_____
Jones, P. J.


_____
Needham, J.